1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    PHILIPS NORTH AMERICA LLC,                No.  2:21-cv-00876 JAM AC

12                     Plaintiff,

13            v.                                ORDER

14    ADVANCED IMAGING SERVICES, et
      al.,

15
                      Defendants.
16

17

18            This action was filed on May 13, 2021.  ECF No. 1.  Plaintiff's motion for a preliminary

19    injunction, ECF No. 5, is set for hearing before the district judge on September 28, 2021.  ECF

20    No. 47.  The undersigned granted plaintiff's motion for early discovery limited to the preliminary

21    injunction issues.  ECF NO. 31.  Production on this early discovery is to be completed no later

22    than August 11, 2021.  ECF No. 47.  Pending before the undersigned are defendant's motion for a

23    protective order, ECF Nos. 38, 48 (joint statement), and plaintiff's motion to compel, ECF Nos.

24    51, 54 (joint statement).  The motion for a protective order was submitted on the papers.  ECF

25    No. 40.  An expedited hearing on the motion to compel took place August 6, 2021 before the

26    undersigned.

27    ////

28    ////

                                              1

# I.  BACKGROUND

Plaintiff Philips North America LLC ("Philips" or "Plaintiff") develops, sells, supports, maintains, and services medical imaging systems, such as computed tomography (CT) systems, x-ray systems, nuclear medicine systems, PET scanners, magnetic resonance (MR) scanners, and ultrasound machines used at hospitals and medical centers, including the proprietary hardware, software, and documentation for such systems.  ECF No. 1 at 2.  Defendant Advanced Imaging Services, Inc. d/b/a Advanced Imaging Parts ("AIP") is a medical device equipment servicing company that services Philips medical imaging devices, and defendant Wang Xiuyuan a/k/a Sean Wang ("Wang") is a sales manager at AIP.  Id.

Plaintiff alleges that AIP, by and through Wang, has (1) received and used Philips' proprietary materials relating to Philips medical imaging systems by fraudulently and without authorization accessing Philips' proprietary computers and computer networks; (2) has fraudulently created, obtained, and/or used counterfeit, intentionally modified, or otherwise unauthorized Philips access control certificates, authorized versions or copies of which are only made available by Philips to Philips' developers and engineers and licensed customers; and (3) has used one or more software exploits and hacked Philips' access controls on Philips' medical imaging machines to access, without authorization, Philips' copyright-protected service and diagnostic software on its medical imaging devices, which contain Philips' trade secrets.  Plaintiff brings claims for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030; the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Pen. Code, § 502; the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 1201; the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; the California Uniform Trade Secrets Act ("CUTSA"); the California Unfair Trade Practices Act, Cal. Bus. & Prof. Code § 17200 et seq.; and fraud.  Id. at 3.

Plaintiff seeks to recover damages and obtain a permanent injunction preventing defendants from accessing Philips' systems and from further disclosing and/or using Philips' confidential and trade secret information.  Id.

////

2

## II.   LEGAL STANDARDS

### A.   Motion to Compel

The scope of discovery in federal cases is governed by Federal Rule of Civil Procedure 26(b)(1).  The current Rule states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.  Fed. R. Evid. 401.  Relevancy to the subject matter of the litigation "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  Relevance, however, does not establish discoverability; in 2015, a proportionality requirement was added to Rule 26.  Under the amended Rule 26, discovery must be proportional to the needs of the case.

A party seeking to compel discovery has the initial burden to establish that its request is proper under Rule 26(b)(1).  If the request is proper, the party resisting discovery has the burden of showing why discovery was denied; they must clarify and support their objections. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).  General or boilerplate objections, without explanation, are not prohibited but are insufficient as a sole basis for an objection or privilege claim.  Burlington Northern & Santa Fe Ry. v. United States Dist. Court, 408 F.3d 1142, 1149 (9th Cir. 2005).

### B.   Motion for Protective Order

Under the Federal Rules of Civil Procedure, the method available to limit the breadth or use of a discovery request is a motion for a protective order under Fed. R. Civ. P. 26(c).  This rule

1   states in relevant part:

2   　　　A party or any person from whom discovery is sought may move for
3   a protective order in the court where the action is pending[.] The
    motion must include a certification that the movant has in good faith
    conferred or attempted to confer with other affected parties in an
4   effort to resolve the dispute without court action. The court may, for
    good cause, issue an order to protect a party or person from
5   annoyance, embarrassment, oppression, or undue burden or
    expense[.]
6

7   Fed. R. Civ. P. 26(c).  Options available to the court include, in part, "forbidding the disclosure or

8   discovery; [ ] forbidding inquiry into certain matters, or limiting the scope of disclosure or

9   discovery to certain matters."  Id.  District courts have broad discretion to determine whether a

10  protective order is appropriate and, if so, what degree of protection is warranted.  Seattle Times

11  Co. v. Rhinehart, 467 U.S. 20, 36 (1984); see also Phillips ex rel. Estates of Byrd v. Gen. Motors

12  Corp., 307 F.3d 1206, 1211–12 (9th Cir. 2002).  The party seeking to limit discovery has the

13  burden of proving "good cause," which requires a showing "that specific prejudice or harm will

14  result" if the protective order is not granted.  In re Roman Catholic Archbishop of Portland, 661

15  F.3d 417, 424 (9th Cir. 2011) (citing Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122,

16  1130 (9th Cir. 2003)).

17  **III.    DISCUSSION**

18  　A.  Background of Disputes

19  　　　On June 24, 2021, the court granted plaintiff's motion to proceed with early discovery in

20  light of the pending motion for a preliminary injunction.  ECF No. 31 at 10.  The following

21  requests[1] were deemed served:

22  　Requests for Production directed to AIP:

23  　DOC. REQUEST NO. 1:

24  　　　All documents identifying, describing, or referring to methods of
    accessing Philips Systems or information, including methods of
25  disabling or circumventing access controls and/or to generate access
    credentials or certificates for accessing any Philips Systems, and all
26  documents identifying, describing, or referring to how you acquired
    or learned of such method.
27

28  _____

    [1]  Identical requests were made to defendant Wang unless otherwise noted by footnote herein.

    4

DOC. REQUEST NO. 2:

All documents sufficient to identify every IST Certificate acquired by you and how it was acquired, including who each IST Certificate was acquired from, how it was acquired, the transaction to acquire the IST Certificate, the expiration date of each IST Certificate, and every person involved in the acquisition of the IST Certificate.

DOC. REQUEST NO. 3:

A native copy of every IST Certificate acquired by you.

DOC. REQUEST NO. 4:

All documents that include the text "sean.wang@philips.com".

DOC. REQUEST NO. 5:

All documents that include the text "philips@philips.com."

DOC. REQUEST NO. 6:

All documents that include the text "123@philips.com."

DOC. REQUEST NO. 7:[2]

All documents regarding your service of a Philips System at: (A) SimonMed Imaging in Beverly Hills, California (B) Providence Saint John's Health Center in Santa Monica, California

DOC. REQUEST NO. 8:

Documents sufficient to identify the following information for each time you serviced a Philips System:

- Customer name (and primary contractor name if you were subcontracted);

- Customer address;

- IST Certificate used and its expiration date;

- Make, model, and unique identifiers (e.g., serial numbers) of all machine(s) serviced;

- Location(s) of all machine(s) serviced;

- Employee(s), contractor(s), and/or others who performed service(s);

- Date(s) of service(s) performed;

---

[2] The RFP to defendant Wang references only Providence St. John's Healthcare.  ECF No. 15-1 at 24.

- Service(s) performed;

- Philips entitlements to perform such service(s); and

- Amounts billed for service(s) performed.

DOC. REQUEST NO. 9:

Any and all scripts, macros, commands, computer applications, key generators, executables, or files you have copied to, installed on, or otherwise utilized to access or use Philips Systems, or have provided to third parties to access or use Philips Systems, and all documents regarding such scripts, commands, or files.

DOC. REQUEST NO. 10:[3]

A forensic copy of, or the opportunity to inspect, any and all hardware or other physical devices that you have used or have provided to third parties for attachment to or interface with Philips Systems in connection with or related to your or third-party access to or service of Philips Systems, and all documents regarding such hardware or other physical devices.

DOC. REQUEST NO. 11:

A forensic copy of, or the ability to inspect, any laptop or other computer utilized by you to gain access to, copy files to, or otherwise modify files on, or provide services to a Philips System.

DOC. REQUEST NO. 12:

A forensic copy of, or the ability to inspect, each USB drive, Philips Smartcard or hardware key utilized by you to gain access to, copy files to, or otherwise modify files on, or provide services to a Philips System, including but not limited to, Philips Systems at SimonMed Imaging in Beverly Hills, California and Providence Saint John's Health Center in Santa Monica, California.[4]

DOC. REQUEST NO. 13:

For each user of each computer within your possession, custody or control, an export of the following Microsoft Windows registry hive keys or subkeys:

- HKEY_LOCAL_MACHINE\SYSTEM\CurrentControlSet\Control\ComputerName\.

---

[3] The associated RFP to defendant Wang reads: "A forensic copy of, or the opportunity to inspect, any and all hardware or other physical devices, including, but not limited to, a computer named "MS-20170704NIDS.", and any other devices that you have used or interface with Philips Systems, and all documents regarding such hardware or other physical devices." ECF No. 15-1 at 25.

[4] The RFP to defendant Wang references only Providence St. John's Healthcare. ECF No. 15-1 at 26.

- HKEY_LOCAL_MACHINE\SYSTEM\CurrentControlSet\ Services\Tcipip\Parameters.

- HKEY_CURRENT_USER\Software\Philips[5]

- HKEY_CURRENT_USER\SOFTWARE\Wow6432Node\S oftware\Philips

DOC. REQUEST NO. 14:

Any document that includes a Philips IST activation code.

DOC. REQUEST NO. 15:

A copy of any document that includes any of the following terms: "FSE: 12345", "FSE: 137426", "FSE: 164072", or "FSE: 176085".

DOC. REQUEST NO. 16:[6]

A forensic copy of, or the opportunity to inspect, the computer named "MS-20170704NIDS".

DOC. REQUEST NO. 17:

Documents sufficient to identify any software used by you for the purpose of or in connection with the servicing of any Philips System.

DOC REQUEST NO. 18:

All documents and communications related to 626 Holdings, Inc. and/or Alexander Kalish.

<u>Interrogatories Directed to AIP</u>

INTERROGATORY NO. 1: List all IST Certificates you acquired or generated to access Philips Systems, whether acquired from Philips or not, and for each IST Certificate:

(i) identify who the IST Certificate was acquired from or who generated it;

(ii) explain how the IST Certificate was acquired or generated;

(iii) identify the date the IST Certificate was acquired or generated, its expiration date, and how the expiration date was set;

(iv) identify any amount paid for the IST Certificate;

(v) describe the transaction through which the IST Certificate was acquired or generated;

---

[5] The RFP to defendant Wang omits the final two bullet points.  <u>Id.</u>
[6] The RFP to defendant Wang reads: "All documents that refer to or are related to the computer or device named "MS-20170704NIDS".  ECF No. 15-1 at 26.

(vi) identify every person involved in the acquisition of the IST Certificate;

(vii) identify every person to whom you provided the IST Certificate;

(viii) identify the username and password used with each IST Certificate; and

(ix) identify every Philips System upon which the IST Certificate was used.

INTERROGATORY NO. 2:

Identify all persons, including your employees as well as contractors and other third parties, whom you have trained or who have trained you, or otherwise provided any information regarding how to gain access to Philips Systems, software, or documents, and describe the training that was conducted and the information that was provided.

INTERROGATORY NO. 3:

Identify each customer (by facility name and address) where you have serviced Philips Systems or sold Philips Systems or sold parts for Philips Systems, the dates of such sales or service, and who was involved in such sales or service.

INTERROGATORY NO. 4:

Identify each email address that AIP[7] used in any way in connection with its work related to any Philips Systems, including emails used to register IST Certificates, and any other tool, service, or machine that required an email address.

INTERROGATORY NO. 5:

Identify and list all customers (by facility name and address) on whose Philips Systems you enabled software options. For each such customer:

(i) identify by make, model, and unique identifiers (e.g., serial number) of the Philips System on which such software was enabled;

(ii) for each such Philips System, identify the IST Certificate used to enable the software options, and provide the IST Certificate information requested in response to Interrogatory No. 1;

(iii) identify all internal communications regarding enablement of the software options in the Philips System(s); and

(iv) identify all communications with the customer regarding enablement of the software options in the Philips Systems.

---

[7] The interrogatory to defendant Wang reads "you" instead of "AIP." ECF No. 15-1 at 32.

8

1    B.  Motion to Compel

2        Plaintiff's motion to compel is limited to RFP No. 3, which seeks "[a] native copy of

3    every IST Certificate acquired by you."  In response, defendants represented that they would

4    produce for inspection the "dongles" containing the IST certificates.  A "dongle" is a piece of

5    computer hardware that can be plugged into a device; physically, it looks like a piece of plastic

6    with a port on the end.  ECF No. 54 at 4.  According to plaintiff, the dongles at issue are smart

7    card readers that include a Philips' customer smart card, and each smart card includes a Philips

8    IST Certificate with attendant entitlements.  Id.

9        The parties engaged in meet and confer discussions regarding inspection of the dongles,

10   and on Tuesday, July 27, 2021, the parties agreed that the inspection would take place in defense

11   counsel's offices on July 29, 2021.  See Affidavit of Ismail Cem Kuru "Kuru Aff.," ¶ 22.3  After

12   the inspection was scheduled, defense counsel raised an objection based on California Code of

13   Civil Procedure § 2019.210, stating in order "to set expectations" that defendant was permitting

14   only the "inspection, and not the testing or imaging of dongles."  Kuru Aff., ¶ 23.4.  Plaintiff

15   contends here that a physical inspection would be useless, that the objection was not timely

16   raised, and that § 2019.210 is inapplicable in any event.  ECF No. 54 at 7.

17       With respect to the timeliness issue, the court agrees with plaintiff that the objection was

18   not timely made and has thus been waived.  It is well established that a failure to object to

19   discovery requests within the time required constitutes a waiver of any objection.  Richmark

20   Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992).  "Generally, the failure

21   to make a timely and specific objection in written discovery responses waives the objection."

22   Stamps.Com, Inc. v. Endicia, Inc., PSI Sys. Inc., No. CV 06-7499 ODW CTX, 2009 WL

23   2576371, at *2 (C.D. Cal. May 21, 2009).

24       Defendants acknowledge that in their "responses to RFP Nos. 2, 3 and 12, Defendants did

25   not assert an objection under Section 2019.210," explaining that "such an objection was not

26   needed given that Defendants only intended to produce the dongles for a physical inspection, and

27   not for Philips to inspect the actual contents of the dongles."  ECF No. 54 at 13.  Defendants

28   contend they did not raise the § 2019.210 objection earlier because "[i]t was not until July 27,

9

2021 when Defendants' counsel contacted Philips' counsel via email to confirm that a physical inspection would only be permitted when it became clear that the Parties were not on the same page with respect to the scope of the inspection." ECF No. 54 at 14. Frankly, it is not credible that defendants believed a visual inspection of the dongles was ever contemplated by plaintiff or, indeed, would be responsive to RFP No. 3. An ISP certificate contained in a dongle is quite obviously part of the contents of the dongle, not an externally visible characteristic of the device. This is not a case in which the physical condition of the dongle is at issue, like a products liability case in which dongles were alleged to have been manufactured with unreasonably sharp plastic edges or collapsed external ports. Accordingly, "inspection" here could not be reasonably construed to mean a purely visual inspection of the physical devices. The court therefore rejects the suggestion that defendants excusably failed to raise a § 2019.210 objection because they did not realize until after the inspection was scheduled that plaintiff intended to inspect the dongles' contents.

Even had the undersigned not found a waiver, defendants' § 2019.210 objection with respect to RFP No. 3 could not succeed. California's trade secret law, codified at CCP § 2019.210[8] states:

> In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.

Cal. Civ. Proc. Code § 2019.210 ). This requirement originated in a 1968 California Court of Appeals case, Diodes, Inc. v. Franzen, which recognized the conflict between a trade secret

---

[8] The question of whether this provision applies in cases brought in federal court under the Eerie doctrine (Erie R.R. v. Tompkins, 304 U.S. 64 (1938)) has not been substantively briefed by the parties. The "Ninth Circuit has not decided whether Section 2019.210 applies in federal court, and district courts that have considered the issue have handled the application of § 2019.210 in various ways." M/A-COM Tech. Sols., Inc. v. Litrinium, Inc., No. SA CV 19-00220-JVS (JDEx), 2019 WL 4284523, at *1 (C.D. Cal. June 11, 2019). Because the undersigned finds § 2019.210 is inapplicable to the discovery at issue in these motions, the issue of whether it generally applies in federal cases need not be reached.

plaintiff's desire not to reveal the specifics of a trade secret in a complaint, and a trade secret

defendant's concern that an insufficiently specific trade secret complaint could lead to overbroad

discovery.  260 Cal. App. 2d 244, 252 (1968).  The Diodes court sought to split the difference and

held that "[b]efore a defendant is compelled to respond to a complaint based upon claimed

misappropriation or misuse of a trade secret and to embark on discovery which may be both

prolonged and expensive, the complainant should describe the subject matter of the trade secret

with sufficient particularity to separate it from matters of general knowledge in the trade or of

special knowledge of those persons who are skilled in the trade, and to permit the defendant to

ascertain at least the boundaries within which the secret lies."  Id.

California courts have identified four main objectives underpinning § 2019.210:

> First, it promotes well-investigated claims and dissuades the filing of
> meritless trade secret complaints.  Second, it prevents plaintiffs from
> using the discovery process as a means to obtain the defendant's
> trade secrets.  Third, the rule assists the court in framing the
> appropriate scope of discovery and in determining whether plaintiff's
> discovery requests fall within that scope.  Fourth, it enables
> defendants to form complete and well-reasoned defenses, ensuring
> that they need not wait until the eve of trial to effectively defend
> against charges of trade secret misappropriation.

Perlan Therapeutics v. Superior Court, 178 Cal. App. 4th 1333, 1343 (2009) (internal citations

omitted).

Where a case involves both trade secret and non-trade secret claims, § 2019.210 applies to

those requests that relate both to the trade secret and other claims.  See M/A-COM Tech. Sols.,

Inc. v. Litrinium, Inc., No. SA CV 19-00220-JVS (JDEx), 2019 WL 4284523, at *5 (C.D. Cal.

June 11, 2019).  But courts have also recognized that some discovery requests may be

independent of trade secret claims and therefore are unrestricted by § 2019.210.  See Masimo

Corp. v. Apple Inc., No. SACV-20-48 JVS (JDEx), 2020 WL 5215308, at *3 (C.D. Cal. July 14,

2020) (affirming magistrate judge's determination that trade secret discovery and patent

discovery did not entirely overlap, and non-trade secret related discovery could move forward

while trade secret related discovery was delayed per compliance with § 2019.210).

Here, the court finds that RFP No. 3 and the related inspection of the dongles are

independent of plaintiff's trade secret claims and that plaintiff cannot be required to comply with

11

1   § 2019.210 prior to inspecting the dongles.  This is true for multiple reasons.  First, the

2   undersigned previously considered and rejected defendants' § 2019.210 argument as to RFP No.

3   3 in allowing expedited discovery, finding that the discovery at issue is tailored to the pending

4   motion for a preliminary injunction and is not related to plaintiff's trade secret claims.  ECF No.

5   31 at 9.  Second, plaintiff has not identified a trade secret at issue with respect to this discovery

6   request because there is no trade secret at issue; plaintiff seeks to examine the dongles to

7   determine whether they are valid, or counterfeit, false, or otherwise unauthorized.  This is a

8   distinct issue from the substance of any trade secrets stolen after using unauthorized IST

9   certificates to gain access to such secrets.  Third, defendants have not identified any trade secret

10   related risk associated with this discovery, asserting it is not their burden to do so.  ECF No. 54 at

11   15.  Even if this is correct, the court cannot see how applying § 2019.210 to the situation at issue

12   here furthers any of the policy objectives underlying the rule's existence (e.g., preventing

13   meritless filings, limiting exposure defendant's trade secrets, curtailing overbroad discovery,

14   ensuring defendant has an adequate opportunity to develop a defense).  See Perlan Therapeutics,

15   178 Cal. App. 4th at 1343.

16        For all these reasons, the motion to compel (ECF No. 51) is GRANTED.

17        C.  Motion for Protective Order

18        Defendants' motion for a protective order (ECF No. 38) seeks generally to apply §

19   2019.210 to this case, and specifically objects to Philips requests for production of documents

20   numbers 7, 8, and 13, as well as interrogatories number 1, and 5 based on Philips' failure to

21   identify its trade secrets as required under Section 2019.210.  ECF No. 48 at 12.  Defendants

22   argue that plaintiff's assertion that the expedited discovery at issue does not implicate their trade

23   secret claims is meritless because that argument "has been rejected by other courts," citing M/A-

24   COM Tech. Sols., Inc., 2019 WL 4284523, at *5.  ECF No. 48 at 17.  As mentioned above, while

25   the court in M/A-COM Tech. Sols., Inc. found that the discovery questions in that case

26   overlapped, other courts have found no overlap and therefore have allowed non-trade secret

27   discovery to proceed absent compliance with § 2019.210.  See Masimo Corp., 2020 WL 5215308,

28   at *3.  Courts have reached different conclusions in different cases on a fact-specific basis.  In this

1    case, the undersigned has already concluded that the expedited discovery now underway is

2    independent of plaintiff's trade secret claims.  ECF No. 31 at 9.  The above discussion of §

3    2019.210 further supports this conclusion.  Specifically, the concerns underlying § 2019.210 and

4    supporting its application are not presented here.

5          For these reasons, defendant's motion for a protective order (ECF No. 38) is DENIED.

6      D.  Attorney's Fees and Costs

7          Because plaintiff's motion to compel is meritorious, an award of fees and costs is

8    appropriate pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) and E.D. Cal. R. ("Local

9    Rule") 230.  The appropriate method for computing fees in this case is the lodestar approach, in

10   which the court multiplies the number of hours reasonably expended on the litigation by a

11   reasonable hourly rate.  Cunningham v. County of Los Angeles, 879 F.2d 481, 484 (9th Cir.

12   1988).  "The measure to be used 'is not actual expenses and fees but those the court determines to

13   be reasonable.'"  Matter of Yagman, 796 F.2d 1165, 1184–85 (9th Cir. 1986).

14         The specific award of fees and costs will be issued by separate order following plaintiff's

15   submission of a billing statement and rate request.  Plaintiff should note that the court will apply

16   local Sacramento rates regardless of counsel's office location absent a very strong showing that it

17   should do otherwise.  See, e.g., Morgan Hill Concerned Parents Ass'n v. California Dep't of

18   Educ., No. 2:11-CV-3471 KJM AC, 2016 WL 4375015, at *13 (E.D. Cal. Aug. 17, 2016).

### IV.    CONCLUSION

20         Plaintiff's motion to compel (ECF No. 51) is GRANTED and defendants' motion for a

21   protective order (ECF No. 38) is DENIED.  Fees will be awarded by separate order; plaintiff is

22   DIRECTED to file a billing statement and rate request with the court with in fourteen (14) days of

23   this order.

24         IT IS SO ORDERED.

25   DATED: August 6, 2021

26                                               _____
                                                 ALLISON CLAIRE
27                                               UNITED STATES MAGISTRATE JUDGE

28