James T. Hultquist (admitted *pro hac vice*)
Email: jhultquist@reedsmith.com
Jennifer Y. DePriest (admitted *pro hac vice*)
Email: jdepriest@reedsmith.com
Ismail C. Kuru  (admitted *pro hac vice*)
Email: ikuru@reedsmith.com
REED SMITH LLP
10 South Wacker Drive
Chicago, IL  60606-7507
Telephone: +1 312 207 1000
Facsimile: +1 312 207 6400

Christopher J. Pulido (SBN 313142)
Email: cpulido@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, California 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| PHILIPS NORTH AMERICA LLC;<br><br>Plaintiff,<br><br>vs.<br><br>ADVANCED IMAGING SERVICES, INC., d/b/a ADVANCED IMAGING PARTS; and WANG XIUYUAN a/k/a SEAN WANG,<br><br>Defendants. | No.: 2:21-cv-00876<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**<br><br>Date: August 24, 2021<br>Time: 1:30 p.m.<br>Courtroom: 6 – 14th Floor<br>Judge: Hon. John A. Mendez<br><br>Compl. Filed: May 14, 2021 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 1

A.    Philips' Customer Service Intellectual Property And Security Measures ............................. 1

B.    Defendants' Unauthorized Conduct........................................................................................ 3

LEGAL STANDARD................................................................................................................... 4

ARGUMENT ................................................................................................................................ 5

A.    Philips' CFAA Claim Is Adequately Pled ............................................................................. 5

B.    Philips' Trade Secret Causes of Action Do Not Fail Because Philips Adequately
      Identifies Its Trade Secrets and Defendants' Misappropriation ............................................ 6

      1.    Philips' Complaint Adequately Alleges Its Trade Secrets.............................................. 6

      2.    Philips' Complaint Adequately Alleges that Defendants Misappropriated
            Philip's Trade Secrets .................................................................................................... 9

C.    Philips' Fraud Claim Is Adequately Pled............................................................................. 11

      1.    Philips' Complaint Specifically Alleges False Misrepresentations............................. 11

      2.    Philips' Complaint Specifically Alleges Reasonable Reliance .................................... 12

D.    Philips' Fraud Claim and CDAFA Claim Are Not Preempted By CUTSA ........................ 13

      1.    CUTSA Preemption At The Pleading Stage ................................................................ 13

      2.    Philips' Fraud Claim Is Not Preempted ...................................................................... 14

      3.    Philips' CDAFA Claim Is Not Preempted .................................................................. 14

CONCLUSION............................................................................................................................ 15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPPOSITION TO MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Solutions, LLC v. TriZetto Grp.*,
　819 F.Supp. 2d 1001 (E.D. Cal. 2011)..........................................................................8, 9

*Alan Neuman Prods., Inc. v. Albright*,
　862 F.2d 1388 (9th Cir. 1988) ......................................................................................11

*Alta Devices, Inc. v. LG Electronics, Inc.*,
　343 F. Supp. 3d 868 (N.D. Cal., 2018) ...........................................................................6

*Angelica Textile Servs. Inc. v. Park*,
　220 Cal. App. 4th 495 (2013) ..................................................................................13, 14

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)..........................................................................................................4

*Autodesk, Inc. v. ZWCAD Software Co.*,
　2015 WL 2265479 (N.D. Cal. May 13, 2015) ..............................................................6, 9

*C&H Travel & Tours, Inc. v. Chow*,
　No. 2:18-CV-06690RGKMRW, 2018 WL 6427369 (C.D. Cal., Sept. 26, 2018).........................15

*Cherokee Chem. Co. v. Frazier*,
　2020 U.S. Dist. LEXIS 249624 (C.D. Cal. Dec. 14, 2020) ...........................................10

*Dealertrack, Inc. v. Huber*,
　460 F.Supp. 2d 1177 (C.D. Cal. 2006) ...........................................................................6

*E. & J. Gallo Winery v. Instituut Voor Landbouw - En Visserijonderzoek*,
　2018 U.S. Dist. LEXIS 92259 (E.D. Cal. June 1, 2019)..........................................6, 7, 8

*Harper Constr. Co. v. Nat'l Union Fire Ins. Co.*,
　2020 U.S. Dist. LEXIS 64360 (S.D. Cal. Apr. 9, 2020)................................................12

*Heieck v. Federal Signal Corp.*,
　2019 WL 6873869 (C.D. Cal Nov. 4, 2019)..................................................................15

*Henry Schein, Inc. v. Cook*,
　No. 16-cv-03166- JST, 2017 WL 783617 (N.D. Cal., March 1, 2017)..........................15

*Imax Corp., v. Cinema Techs, Inc.*,
　152 F.3d 1161 (9th Cir. 1998) .........................................................................................8

*JEB Group, Inc. v. San Jose III*,
　2020 WL 2790012 (C.D. Cal. March 31, 2020) ............................................................15

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
  171 Cal. App. 4th 939 (2009) ................................................................13

*Lazy Y Ranch LTD. v. Behrens*,
  546 F.3d 580 (9th Cir. 2008) ...................................................................4

*M Seven System Limited v. Leap Wireless International, Inc.*,
   No. 12-CV-1424 CAB (BLM), 2013 WL 12072526 (S.D. Cal., June 26, 2013) ........................15

*Mattel, Inc. v. MGA Ent., Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011) ..............................................13, 14

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ...................................................................4

*Netlist, Inc. v. Smart Storage Sys.*,
  No. 13-cv-5962-YGR, 2014 U.S. Dist. LEXIS 124345 (N.D. Cal. Sep. 4, 2014) ........................9

*Regents of the University of California v. Aisen*,
  2016 WL 4097072 (S.D. Cal. April 18, 2016)................................................15

*SunPower Corp. v. SolarCity Corp.*,
  Case No. 12-cv-00694-LHK, 2012 WL 6160472 (N.D. Cal., Dec. 11, 2012) ...........................13

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*
  313 F. Supp. 3d 1056 (N.D. Cal. 2018) ..................................................8, 15

*Therapeutic Research Faculty v. NBTY, Inc.*,
  488 F. Supp. 2d 991 (E.D. Cal. 2007)........................................................6

*United States v. Drew*,
  259 F.R.D. 449 (C.D. Cal. 2009)..............................................................5

*Ebeid ex rel. United States v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ...................................................................11

*Waymo v. Uber Technologies, Inc.*,
  256 F. Supp. 3d 1059 (N.D. Cal. 2017) ....................................................13

*Western Air Charter Inc. v. Schembari*,
  No. 17-00420-AB, 2017 WL 10638759 (C.D. Cal., October 6, 2017)........................15

**Statutes**

18 U.S.C. § 1030(a)(2)(c) ............................................................................5

18 U.S.C. § 1030(a)(4)................................................................................5

18 U.S.C. § 1839(3) ....................................................................................7

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Cal. Bus. & Prof. Code § 17200 *et seq.* ...........................................................................1

Cal. Civ. Code § 3424.1(d) ................................................................................................7

Cal. Civ. Code § 3424.1(d)(1) ...........................................................................................7

Cal. Civil Code § 3426.7 ..................................................................................................14

Cal. Pen. Code § 502(c) ..............................................................................................14, 15

California Comprehensive Computer Data Access and Fraud Act (CDAFA) ......................... 1, 13-15

California Uniform Trade Secrets Act (CUTSA) ...................................................... *passim*

Computer Fraud and Abuse Act (CFAA) .......................................................................1, 14

Defend Trade Secrets Act (DTSA) ..................................................................................1, 9

Digital Millennium Copyright Act (DMCA) ......................................................................1

**Rules**

Fed.R. Civ. P. 9 ...............................................................................................................11

Fed. R. Civ. P. 12(b)(6)...................................................................................................4, 8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**INTRODUCTION**

Philips brings this action because Defendants threaten the security and integrity of Philips' life saving imaging systems by stealing Philips' protected and proprietary software servicing tools and documentation through use of counterfeit "certificates" that allow them to circumvent—or "hack"—certain technological protections, access Philips' proprietary servicing tools and documentation without authorization, and then use that information to service the Philips systems. By hacking Philips' access controls on the medical imaging machines to bypass Philips' authentication mechanisms, Defendants have violated the Computer Fraud and Abuse Act ("CFAA"), the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), and the Digital Millennium Copyright Act ("DMCA"). Once inside Philips' systems, Defendants gain access to and misappropriate Philips' confidential and trade secret CSIP material and software in violation of the Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA"). Defendants' conduct also gives rise to claims for common law fraud as well as unfair competition under Cal. Bus. & Prof. Code §17200 *et seq*. Defendants do not challenge the adequacy of Philips' pleading of its DMCA and unfair competition claims.

Each of Philips' causes of action are adequately pled. After essentially admitting to accessing Philips' systems without authorization (*see* ECF No. 30-4 at ¶ 28 (admitting that "Advanced Imaging purchased a dongle from Alexander Kalish ***to gain access to [Philips'] equipment*** owned by Advanced Imaging's clients")), Defendants attempt to skirt liability on technicalities and a blatant misreading of the facts. Defendants' arguments are all without merit.

**FACTUAL BACKGROUND**

**A.     Philips' Customer Service Intellectual Property And Security Measures**

Philips develops, manufactures, and sells medical imaging systems, including x-ray, magnetic resonance (MR), computer tomography (CT), ultrasound, and advanced molecular imaging systems ("Philips systems"). ECF No. 1 ("Compl."), ¶ 19. To support and maintain those systems, Philips has developed extensive proprietary information, documentation, and software for servicing its systems that it refers to as its Customer Service Intellectual Property ("CSIP"). *Id.* ¶ 20. Philips' confidential trade secret CSIP materials and software are not generally known in the industry. *Id.* ¶ 33.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Philips authorizes individuals to have "levels" of access to its CSIP based on their role and

2    contractual terms. *Id.* ¶ 23.  CSIP Level 0 materials are available to those in the United States who

3    request access to such materials. *Id.*  Philips places greater restrictions on CSIP Level 1 materials and

4    makes them available only to Philips employees and customers with a valid contract and subject to

5    non-disclosure agreements. *Id.*  Philips reserves CSIP Level 2 access for authorized Philips employees

6    and specific trade partners under contract, and Level 3 access for only a subset of service specialists

7    within Philips. *Id.*

8    Philips has expended substantial efforts to protect the confidentiality and value of its CSIP,

9    including implementing and maintaining technologies that allow Philips to efficiently distribute its

10   CSIP materials to authorized individuals, while maintaining confidentiality, management and control

11   of these materials, and the terms and conditions under which they may be used. *Id.* ¶ 24.  This

12   management and control includes contractual obligations as well as hardware and software controls in

13   digital form. *Id.*  For example, Philips employees and authorized customer representatives must

14   execute confidentiality agreements in exchange for advanced training and enhanced access to Philips'

15   CSIP. *Id.* ¶ 25.  Such agreements acknowledge that the Philips employees and authorized customer

16   representatives who receive access also have the benefit of Philips' substantial investment in Philips'

17   proprietary information. *Id.*  This investment includes thousands of hours of work by Philips

18   employees in the development of advanced troubleshooting and diagnostic methods and protocols

19   relating to the maintenance and repair of Philips' equipment. *Id.*  Philips also provides confidentiality

20   and proprietary notices on such documentation and software. *Id.*

21   Philips has also developed and implemented robust technological measures to limit access to

22   its CSIP materials. *Id.* ¶ 26.  One such technological measure is Philips' Integrated Security Tool

23   ("IST"), which is a digital rights management solution for preventing unauthorized access to Philips'

24   CSIP. *Id.* ¶ 27.  Philips' IST application suite provides mechanisms to manage user entitlements

25   through certificate generation, distribution, and entitlement verification. *Id.*  Philips generates a user-

26   specific IST certificate that specifies the documents and service tools the user is entitled to access, and

27   delivers the certificate to a client IST application resident on a user's personal computer. *Id.*  Each

28   IST certificate is valid for 30 days and must be renewed, otherwise the IST certificate expires and is

no longer recognized as valid by the Philips systems. *Id.* ¶ 29.

The IST certificate manages access to various Philips confidential and proprietary CSIP materials. *Id.* ¶ 28. For example, Philips uses its IST to restrict access to service software and functionalities on Philips systems. *Id.* Service software and functions on the Philips systems are each assigned a CSIP level. *Id.* ¶ 30. Further, each IST certificate is entitled to access a certain CSIP level. *Id.* A user must present his or her IST certificate to the specific medical imaging system to enable the system to check which service software and tools the user is authorized to access. *Id.* The Philips system then makes service software and functions available to the user based on the entitlements specified in the user's IST certificate. *Id.* Thus, a customer who entered into a service contract with confidentiality and non-disclosure terms may access certain service tools that are not available to a customer who has not entered into such a service contract. *Id.* An authorized Philips Field Service Engineer ("FSE") can access additional service tools, and an authorized Philips National Support Specialist would be able to access further tools that would not be made available to a Philips FSE. *Id.*

Philips encrypts its CSIP Level 1 and Level 2 electronic documents. *Id.* ¶ 31. A user's IST certificate provides a user with entitlements to decrypt authorized Philips-encrypted CSIP materials but only with respect to specific modalities. *Id.* For example, a user with an IST certificate that provides Level 1 access to Philips' CT documents and Level 0 access to Philips' x-ray documents, would be prevented from decrypting Level 2 CT documents or Level 1 or Level 2 x-ray documents, because the user lacks the necessary entitlements. *Id.* Similarly, an individual with Level 0 access is not entitled to decrypt Philips' encrypted documents at Level 1 or Level 2, nor to gain access to the Level 1, Level 2 or Level 3 service tools. *Id.*

**B.     Defendants' Unauthorized Conduct**

Philips has never authorized Defendants to obtain an IST certificate beyond CSIP Level 0 access, or to service the Philips systems using Philips FSE-level access credentials; nor has it authorized any person or entity to distribute Philips' FSE-level access credentials to Defendants. *Id.* ¶ 36. Nonetheless, Sean Wang, on behalf of AIP, serviced the Philips systems at St. John's Healthcare Center and SimonMed Beverly Hills, by using false login credentials to access Philips' restricted CSIP materials. *Id.* ¶¶ 34-35. A Philips FSE observed Defendant Wang using a Philips IST certificate with

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   at least Level 1 credentials, and with an expiration date well over the certificate's 30-day IST

2   expiration period.  *Id.* ¶ 34.  When asked how he obtained such a long expiration, Defendant Wang

3   indicated there were "ways to do it", or words to that effect.  *Id.*  Philips' subsequent investigation has

4   uncovered that Defendants have used false IST accounts and used counterfeit or otherwise

5   unauthorized Philips access control certificates to hack through Philips' access controls to gain

6   unlicensed and unauthorized access to Philips' proprietary CSIP.  *Id.* ¶ 35.  Philips discovered through

7   the log files in MR devices at St. John's Healthcare Center that on April 17, 2020 and June 6, 2020,

8   Defendant Wang had used a fake certificate to access CSIP Level 2 restricted software.  *Id.*  This fake

9   certificate was associated with a fake user number and with an expiration date of July 11, 2029, which

10  cannot be a legitimate date in light of the 30-day expiration period.  *Id.*  And more recently, Philips

11  learned through its IST log files that Defendants obtained an IST certificate over the Internet while

12  impersonating a Philips FSE on April 6, 2021 at 12:50 a.m., using a computer named "MS-

13  20170704NIDS\Administrator."  *Id.*  The same computer was used by a user purporting to be "Sean

14  Wang" and user ID "164072" on September 2, 2020.  *Id.*

15          In short, as the Complaint alleges, Defendants hacked the technological protections on Philips

16  systems (*i.e.*, the IST), accessed Philips' proprietary servicing tools and documentation (*i.e.*, the CSIP)

17  without authorization, and then used that proprietary CSIP information to service the Philips systems.

18                                    **LEGAL STANDARD**

19          The Court should deny a motion to dismiss brought under Rule 12(b)(6) where, like here, a

20  complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is

21  plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and

22  citation omitted).  In considering a motion to dismiss for failure to state a claim, the court generally

23  accepts as true the allegations in the complaint, construes the pleading in the light most favorable to

24  the party opposing the motion, and resolves all doubts in the pleader's favor.  *Lazy Y Ranch LTD. v.*

25  *Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  "In sum, for a complaint to survive a motion to dismiss,

26  the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

27  suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969

28  (9th Cir. 2009).  Philips' Complaint plainly meets this standard.

1

## <u>ARGUMENT</u>

2

**A.      Philips' CFAA Claim Is Adequately Pled**

3       As Defendants note, to state a Section 1030(a)(3)(c) claim, a plaintiff must plead that the

4   defendant (1) intentionally accessed a computer, (2) without authorization or exceeding authorized

5   access, and that he (3) thereby ***obtained information*** (4) from a protected computer, and that (5) there

6   was loss to one or more persons during any one-year period aggregating at least $5,000 in value.  *See*

7   18 U.S.C. § 1030(a)(2)(c).  And to state a claim for violation of Section 1030(a)(4), a plaintiff must

8   allege that a defendant (1) accessed a "protected computer," (2) without authorization or exceeding

9   such authorization that was granted, (3) "knowingly" and with "intent to defraud," and thereby (4)

10  furthered the intended fraud and ***obtained anything of value***, causing (5) a loss to one or more persons

11  during any one-year period aggregating a loss $5,000 in value.  *See* 18 U.S.C. § 1030(a)(4).  The *only*

12  element Defendants dispute is whether Philips sufficiently alleged that Defendants "obtained

13  information" or "obtained anything of value" when Defendants knowingly hacked into Philips

14  systems, accessed Philips' restricted CSIP materials without authorization, and caused loss to Philips

15  at least $5,000 in value.  ECF No. 37 ("Mot.") at 11.

16      Defendants' contention is without merit.  "Obtain[ing] information from a computer" has been

17  described as "includ[ing] mere observation of the data."  *United States v. Drew*, 259 F.R.D. 449, 457

18  (C.D. Cal. 2009) (quoting S.Rep. No. 99-432, at 6-7 (1986)).  Here, Philips alleged that Defendants

19  "obtained information" from Philips systems when they used fake IST certificates to access Philips'

20  proprietary CSIP materials (*see* Compl. ¶¶ 34, 35, 45, 51-52) and then *used* those materials that it

21  *obtained* through their unauthorized access to service the Philips systems at St. John's Healthcare

22  Center and SimonMed Beverly Hills.  This servicing information was obtained as a direct result of

23  Defendants' unauthorized access methods.  (*See id.* at ¶¶ 34-35.)  Defendants' claim that the only

24  allegation relating to CFAA's "obtained information" element is Defendants' *acquisition* of the fake

25  IST certificate (Mot. at 11-12) is simply false.  This alleged conduct, access and use of Philips' CSIP

26  materials—the information *obtained* by using a fake IST certificate—is more than sufficient to meet

27  the baseline requirement of "mere observation" of information.  *Drew*, 259 F.R.D. at 457.

28      As Philips has sufficiently pled all essential elements of its CFAA claim, Defendants' motion

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

to dismiss Count I should be denied.

**B.     Philips' Trade Secret Causes of Action Do Not Fail Because Philips Adequately Identifies Its Trade Secrets and Defendants' Misappropriation**

Defendants contend that Philips failed to identify its trade secrets with sufficient particularity and that Defendants misappropriated them.  Mot. at 12-16.  Defendants are wrong.

**1.     Philips' Complaint Adequately Alleges Its Trade Secrets**

As Defendants concede, at the pleading stage, a plaintiff need not "spell out the details of a trade secret," citing *Alta Devices, Inc. v. LG Electronics, Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal., 2018) (internal citation to *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, *5 (N.D. Cal. May 13, 2015)) and *E. & J. Gallo Winery v. Instituut Voor Landbouw - En Visserijonderzoek*, 2018 U.S. Dist. LEXIS 92259, *3 (E.D. Cal. June 1, 2019).  Mot. at 13.  Indeed, in all three of these cases cited by Defendants, the court ***denied*** the motion to dismiss and found the plaintiff's description of its trade secrets to be sufficient.  *See Alta Devices*, 343 F. Supp. 3d at 881 (finding sufficient particularity where plaintiff pled trade secrets as "confidential cost analysis; proofs and tests of manufacturing concepts and techniques; tool roadmaps; manufacturing process flows; and identification of equipment and equipment vendors; and information related to the foregoing."); *Autodesk, Inc.*, 2015 WL 2265479, *5 (trade secret pled as "portions of [source] code that underlie the commands, interfaces and program files associated with the dozens of specific features"); *E. & J. Gallo Winery*, 2018 U.S. Dist. LEXIS 92259, *10-11 (trade secret sufficiently described because "plaintiffs have precisely identified in their complaint what parts of the RW dryer the alleged trade secrets cover, . . . permitting defendants to ascertain the boundaries within which the secret lies") (internal citations omitted).  The same result is warranted here.  As the court in *Autodesk* aptly notes, courts are "in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *Autodesk*, 2015 WL 2265479, *6; *see also Dealertrack, Inc. v. Huber*, 460 F.Supp. 2d 1177, 1183-84 (C.D. Cal. 2006) (denying motion to dismiss where plaintiff sufficiently identified "FEX System" as the trade secret); *Therapeutic Research Faculty v. NBTY, Inc.*, 488 F. Supp. 2d 991, 999-1000 (E.D. Cal. 2007) (identification of "confidential username and passcode" sufficient).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

The DTSA defines a "trade secret" as "financial, business, scientific, technical, economic, or engineering information" that "(A) the owner thereof has taken reasonable measures to keep . . . secret; and (B) . . . derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).  With one exception,[1] CUTSA's definition of "trade secret" is identical to DTSA's definition: "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  *See* Cal. Civ. Code § 3426.1(d).

Philips's Complaint describes the trade secrets with sufficient detail "to allow [Defendants] 'to be on notice of what trade secrets are at issue.'"  *E. & J. Gallo*, 2018 U.S. Dist. LEXIS 92259, *10 (citations omitted):

- "To support and maintain the Philips systems,[2] Philips has developed extensive proprietary information, documentation, and software for servicing its medical imaging systems.  Philips refers to these service tools and service documentation as its Customer Service Intellectual Property ('CSIP')."  Compl. ¶ 20.

- "…Philips' restricted and confidential trade secret CSIP materials and software...."  *Id.* ¶ 33.

- "Philips owns and possesses certain confidential, proprietary, and trade secret information, including scientific, technical, and engineering information and financial, business, and economic information, as alleged above and below, in Philips' proprietary software for the Philips systems, and Philips service and diagnostic software."  *Id.* ¶ 78.

Moreover, Philips' Complaint describes how Philips protects those trade secrets, including: (i) implementing and maintaining technologies allowing Philips to efficiently distribute these materials to individuals who are authorized and need to know such information, while maintaining confidentiality, management and control of the distribution of these materials, and the terms and

---

[1] CUTSA does not include "not being readily ascertainable through proper means" as part of the trade secret definition.  *See* Cal. Civ. Code § 3426.1(d)(1).

[2] The complaint defines "Philips systems" as "medical imaging systems, including x-ray, magnetic resonance (MR), computed tomography (CT), ultrasound, and advanced molecular imaging systems" developed, manufactured, and sold by Philips.  Compl. ¶ 19.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

conditions under which they may be used, *id.* ¶ 24; (ii) requiring that authorized Philips employees and customers execute confidentiality agreements, *id.* ¶ 25; (iii) developing and implementing robust technological measures to control access to its CSIP, one such measure being Philips' Integrated Security Tool, *id.* ¶ 27; and (iv) encrypting CSIP Level 1 and Level 2 electronic documents, *id.* ¶ 31.

Philips' Complaint also describes how Philips' trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information:  they allow Philips to secure the Philips systems and grow its relationships with its customers; and they help Philips achieve an advantage in the marketplace with respect to the quality, range, and efficiency of the repair and maintenance services that it is able to offer and with respect to pricing related thereto.  *See id.* ¶¶ 33, 39, 82, 93.

Defendants' cited cases are inapposite.  As the court in *E. & J. Gallo* noted when distinguishing *Space Data I* and *Synopsys*, "[i]n contrast to the allegations addressed by the courts in *Space Data I* and *Synopsys*, plaintiffs in this case have alleged that the trade secrets concern the design of specific parts of a specific machine."  *E. & J. Gallo*, 2018 U.S. Dist. LEXIS 92259, *13.  The same is true here, as Philips has alleged that its trade secrets concern its proprietary CSIP information, documentation, and software for servicing its medical imaging systems, including x-ray, MR, CT, ultrasound, and advanced molecular imaging systems.  Compl. ¶¶ 19, 20, 33, 78.

Defendants' other cases are distinguishable because they did not involve a motion brought under Rule 12(b)(6).  For example, Defendants cite *Imax Corp., v. Cinema Techs, Inc.,* 152 F.3d 1161, 1164-65 (9th Cir. 1998) for the propositions that "alleged trade secrets must be described with sufficient particularity," that "[p]laintiffs must 'clearly refer to tangible trade secret material' instead of referring to a 'system which potentially qualifies for trade secret protection," and that "[p]laintiffs may not simply rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial."  Mot. at 14.  While Philips has done so, *Imax* notably was an appeal of a grant of a ***summary judgement*** motion, applying a ***different—and more stringent—standard*** than that used at the pleading stage.  *Imax*, 152 F.3d at 1164.  As another example, Defendants cite *Agency Solutions, LLC v. TriZetto Grp.*, 819 F.Supp. 2d 1001, 1015 (E.D. Cal. 2011) for the proposition that "the plaintiff

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  must clearly identify what the 'thing' is that is alleged to be a trade secret" and to "be able to clearly

2  articulate why that 'thing' belongs in the legal category of trade secrets." Mot. at 14. But this case,

3  too, has a different posture—it was before the court on a ***preliminary injunction*** motion for trade

4  secret misappropriation, and therefore plaintiff needed to meet the ***heightened "likelihood of success"***

5  ***standard***. *Agency Solutions*, 819 F. Supp. 2d at 1014.[3]

6  Though Philips is not required to describe its trade secrets in its Complaint in a way that will

7  destroy the confidential nature of those secrets, *Autodesk*, 2015 WL 2265479, at *6, there is no mystery

8  here as to what they are—they are the proprietary CSIP materials that Defendants sought to obtain

9  through their hacking in order to service Philips systems. In any event, Defendants will have the

10  opportunity to see further description of Philips' trade secrets as the case progresses, through discovery

11  or otherwise. *Netlist, Inc. v. Smart Storage Sys.*, No. 13-cv-5962-YGR, 2014 U.S. Dist. LEXIS

12  124345, at *14 (N.D. Cal. Sep. 4, 2014) ("Netlist's SAC, coupled with its Amended Trade Secret

13  Disclosure describe the trade secrets and alleged misappropriation with sufficient specificity."). But

14  the parties simply are not at that stage yet; Defendants are putting the cart before the horse.

15  **2.    Philips' Complaint Adequately Alleges that Defendants Misappropriated**

16  **Philip's Trade Secrets**

17  Defendants next take aim at the definition of "misappropriation" under the DTSA and CUTSA,

18  arguing that "Philips fails to proscribe *[sic]* any specific or well-pled facts to support any 'acquisition,'

19  'disclosure' or 'use' theories of misappropriation." Mot. at 16. In doing so, Defendants ignore the

20  majority of the Complaint, cherry-picking a single term ("access") to argue that "***the only*** information

21  that Philips offers with respect to its trade secrets is the allegation that Defendants 'accessed' Philips

22  trade secrets." *Id.* (emphasis added). To start, the fact that certain allegations use the term "access"

23  instead of "acquire" or "use" is of no moment—accessing the trade secret Level 1 and Level 2 CSIP

24  information to service the imaging machines ***is*** acquisition and use of those trade secrets. Moreover,

25  semantics aside, Philips ***does*** allege that Defendants *at least* improperly acquired and used Philips'

---

26  [3] The trade secrets involved in *Agency Solutions* are vastly different than the ones alleged here.

27  Agency Solutions claimed trade secrets in a high-level discussion that plaintiff had with defendants where the parties discussed how their two pieces of software would interact. Here, Philips' claims

28  secrets in proprietary software and functions that are locked away and for use only by persons authorized by Philips.

proprietary CSIP information.  As Philips alleges in its Complaint, with emphasis added:

- "AIP, by and through Wang, *has received and used Philips' proprietary materials* relating to Philips medical imaging systems *by fraudulently and without authorization accessing* Philips' proprietary computers and computer networks without authorization." Compl., ¶ 3.

- Defendants' "*use of unauthorized credentials, false accounts and certificates, and unauthorized access* of Philips' protected computers, allow[ed] Wang *to obtain Philips' proprietary material* and allow[] Wang and AIP to gain an unfair advantage in the marketplace, including over Philips." *Id.*, ¶ 6.

- "Defendants *have serviced* the Philips systems in the Los Angeles, California area, and specifically the Philips systems at Providence St. John's Healthcare Center and SimonMed Beverly Hills, *by using false login credentials to access Philips' restricted CSIP materials*." *Id.*, ¶ 34.

- "Philips discovered through the log files in MR devices at St. John's Healthcare Center that on April 17, 2020 and June 6, 2020, Sean Wang had *used a fake certificate to access CSIP Level 2 restricted software*." *Id.*, ¶ 35.

- "Kalish and/or 626 Holdings provided one or more fake certificates to Sean Wang *for use in accessing Philips' CSIP*." *Id.*, ¶ 37.

- "By fraudulently and improperly creating fake IST certificates with beyond Level 0 credentials, Defendants *improperly gained access to Philips' confidential material and trade secrets*." *Id.*, ¶ 40.

- "Upon information and belief, Defendants *misappropriated some or all of these trade secrets by improper means for their own use* and/or benefit without express or implied consent by Philips. At the time of their *use of such trade secrets*, Defendants knew or had reason to know that *their knowledge of the trade secrets was acquired by improper means* or under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit their use, and that their knowledge of Philips' trade secrets was derived improperly or from or through a person who owed a duty to Philips to maintain the secrecy of the trade secrets or limit their use." *Id.*, ¶¶ 83, 94.

Simply put, Defendants improperly gained access to and thus acquired Philips trade secret CSIP information and software through their unlawful hacking, and then used those trade secrets to service Philips systems, at least at St. John's and SimonMed.  The fact that certain allegations do not use certain magic words ("acquisition," "disclosure" or "use") does not matter.  *See Cherokee Chem. Co. v. Frazier*, 2020 U.S. Dist. LEXIS 249624, *14-15 (C.D. Cal. Dec. 14, 2020) ("[T]he Court is unwilling to force Plaintiff to go through the pointless exercise of pleading the 'magic words' here, where it is clear that the Complaint as a whole provides [defendant] with adequate notice of the factual basis of [plaintiff's] misappropriation claim against it.").  There is no question that Philips uses the "magic words" in some of its allegations, but supports the description otherwise with other words.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

As Philips has sufficiently pled all essential elements of its trade secrets claims, Defendants' motion to dismiss Counts IV and V should be denied.

## C.    Philips' Fraud Claim Is Adequately Pled

Under Rule 9 of the Federal Rules of Civil Procedure, a complaint must "state with particularity the circumstances constituting fraud . . . including the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotations and citation omitted); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988) (under 9(b) "the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation"). Defendants argue Philips failed to state what representations were made, to whom they were made, when they were made or how Philips relied on them. Mot. at 16-19. Defendants' argument is again without merit.

### 1.    Philips' Complaint Specifically Alleges False Misrepresentations

Defendants acknowledge that Philips alleged that "Defendants have made false representations of material fact to Philips by impersonating a Philips FSE, providing false personal information, purporting to be associated with Philips and having an employee identification, and having authorization to access Philips systems, at least on or about September 2, 2020 and April 6, 2021." Mot. at 17 (quoting Compl. ¶ 107). Defendants otherwise misconstrue the basis for Philips' fraud claim and ignore the *facts* Philips pled in support, arguing that the Complaint does not allege (i) to whom any particular statements were made, (ii) where the statements were made, (iii) details regarding the false statements, and (iv) how the statements were made. Mot. at 17-18. But when properly read together, the allegations sufficiently detail the who, where, what and how:

- **To whom:** Defendants accomplished their fraud on Philips by using fake login credentials via the fake IST certificates that Defendants obtained from Alexander Kalish, and by providing to Philips false personal information, purporting to be associated with Philips and having an employee identification, and having authorization to access Philips' systems. *See id.* ¶¶ 35, 37, 107-112. The fake IST certificates create a false log entry, telling Philips that the user of the IST certificate is a legitimate Philips FSE that should have Level 1 and Level 2 access. *Id.*

- **Where:** at Providence St. John's Healthcare Center, SimonMed Beverly Hills, and via Philips' network interfaces, *see id.* at ¶¶ 34, 108.

- **What & how:** Sean Wang, on behalf of AIP, falsely held himself out as an authorized Philips FSE, with credentials that he did not properly have, in order to fraudulently gain access to Philips' proprietary CSIP materials. Philips discovered

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

this activity through the log files in MR devices at St. John's Healthcare Center, which showed that on April 17, 2020 and June 6, 2020, Sean Wang had used a fake certificate with fake credentials to access CSIP Level 2 restricted software. *See id.* at ¶ 35. This fake certificate was associated with a fake user number and with an expiration date of July 22, 2029, which cannot be a legitimate date in light of the 30-day expiration period. *See id.* Philips further discovered through its IST log files Defendants obtained an IST certificate over the Internet while again impersonating a Philips FSE on April 6, 2021 at 12:50 a.m. using a computer named "MS-20170704NIDS\Administrator." *Id.* The same computer was used by a user logged in with username "Sean Wang" and user ID "164072" on September 2, 2020. *Id.* Furthermore, Defendants provided false personal information, purporting to be associated with Philips and having an employee identification, and having authorization to access Philips systems. *Id.* at ¶¶ 35, 107, 110.

Moreover, Defendants' assertion that "the mere fact that Philips '*activated* a false IST certificate' on a certain date does not equate to any purported false *statements* made by Defendants" is not only legally unsupported, but is also factually inaccurate. As an initial matter, a misrepresentation need not be verbal. *See Harper Constr. Co. v. Nat'l Union Fire Ins. Co.*, 2020 U.S. Dist. LEXIS 64360, *12 (S.D. Cal. Apr. 9, 2020) (allegation that "misrepresentations are verbal, written, and/or implied by conduct of Defendant" are sufficient because "[t]hese allegations satisfy the 'where' and 'how' requirements" of a fraud claim"). And in any event, the misrepresentation is not *Philips* activating a false IST certificate—it is *Defendants'* use of a fake IST certificate (via a dongle that Defendants plug into the Philips imaging system) to trick Philips into allowing access to information to which Defendants are not otherwise entitled that constitutes to the misrepresentation.

## 2. Philips' Complaint Specifically Alleges Reasonable Reliance

Defendants give short shrift to their argument that the Complaint fails to allege that Philips reasonably relied on Defendants' false representations. *See* Mot. at 18-19. Defendants argue that "Philips fails to allege how, as the manufacturer, it reasonably relied upon any allegedly fraudulent representations made by Defendants." *Id.* at 18. This, again, reveals Defendants' distorted view of the facts. To start, Philips is not only a manufacturer, but also a service provider—as stated in the very first allegation in the Complaint. Compl., ¶ 1 ("Philips develops, sells, *supports, maintains, and services* medical imaging systems…."). Moreover, the Complaint alleges that "Defendants' false representations were reasonably calculated to deceive Philips into believing that Defendants were a Philips FSE and that Defendants were authorized to obtain access to the Philips systems with FSE level credentials." *Id.*, ¶ 111. Philips then reasonably relied on those false representations through its

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  automated system to allow Defendants to access Philips' CSIP materials.  *Id.*, ¶¶ 111-113 ("Philips

2  was in fact deceived by Defendants' false representations, communicated via Philips network

3  interfaces because Defendants hid their true identities [and] relied upon the counterfeit, intentionally

4  modified, or otherwise unauthorized IST certificates that Defendants used in order for Defendants to

5  gain access to Philips' restricted software and information.").  Accordingly, Defendants' contention

6  that "Philips has not provided any information whatsoever that would permit Defendants to investigate

7  and defend itself *[sic]* against the allegations pertaining to fraud" (ECF No. 37 at 18), rings false.

8      As Philips has sufficiently pled all essential elements of its fraud claim, Defendants' motion to

9  dismiss Count VII should be denied.

10 **D.    Philips' Fraud Claim and CDAFA Claim Are Not Preempted By CUTSA**

11     Defendants' argument that Philips' fraud and CDAFA claims are preempted are without merit.

12     **1.    CUTSA Preemption At The Pleading Stage**

13      "The preemption inquiry for those causes of action not specifically exempted by § 3426.7(b)

14 focuses on whether other claims are not more than a restatement of the same operative facts supporting

15 trade secret misappropriation . . . .  If there is no material distinction between the wrongdoing alleged

16 in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other

17 claim."  *SunPower Corp. v. SolarCity Corp.*, Case No. 12-cv-00694-LHK, 2012 WL 6160472, *3

18 (N.D. Cal., Dec. 11, 2012) (internal citations omitted).  "At the pleadings stage, the supersession

19 analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual

20 allegations can be reassembled to independently support other causes of action."  *Waymo v. Uber*

21 *Technologies, Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017).  CUTSA does not displace tort

22 claims, which, "although related to a trade secret misappropriation, are independent and based on facts

23 distinct from the facts that support the misappropriation claim."  *Angelica Textile Servs. Inc. v. Park*,

24 220 Cal. App. 4th 495, 506 (2013); *see also K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations,*

25 *Inc.*, 171 Cal. App. 4th 939, 961 (2009) (CUTSA preemption only applies where "the gravamen of the

26 wrongful conduct asserted" in a claim is that the defendant misappropriated the plaintiff's trade

27 secrets).  Indeed, in *Mattel, Inc. v. MGA Ent., Inc.,* 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011), cited

28 by Defendants, the court found that though part of the plaintiff's conversion claim was superseded

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  because it relied on identical facts, the claim survived to the extent it concerned property other than

2  trade secrets.  782 F. Supp. 2d at 997.  Put differently, if the conduct alleged is wrongful whether or

3  not the defendant used the trade secret information, then the claim is not preempted.

4  **2.  Philips' Fraud Claim Is Not Preempted**

5  Philips' fraud claim is not preempted by CUTSA because it is based on facts "distinct from the

6  facts that support the misappropriation claim."  *Angelica*, 220 Cal. App. 4th at 506.  Philips' fraud

7  claim is based on the fact the "Defendants have made false representations of material fact to Philips

8  by impersonating a Philips FSE, providing false personal information, purporting to be associated with

9  Philips and having an employee identification, and having authorization to access Philips' systems, at

10  least on or about September 2, 2020 and April 6, 2021."  Compl., ¶ 107; *see also id.,* ¶¶ 108-109.  The

11  plain language of these allegations establishes that none are based on Defendants' misappropriation

12  of Philips' *trade secret* information.  It was wrong for Defendants to use the fake IST certificates and

13  represent to Philips that they were a Philips FSE (when in fact they never were) to access the Philips

14  systems **whether or not** the information Defendants obtained through their false representations

15  amounted to trade secrets, or whether or not Defendants used such information.  Even if all allegations

16  of misappropriation were removed from Philips' Complaint, Philips' fraud claim would still survive.

17  Defendants notably fail to cite any cases holding that fraud claims were preempted by CUTSA, and

18  on the allegations here, Philips' fraud claim is not.  Defendants' motion accordingly should be denied.

19  **3.  Philips' CDAFA Claim Is Not Preempted[4]**

20  As with the cause of action for fraud, Philips' cause of action for violation of CDAFA is not

21  preempted by CUTSA.  Numerous courts have recognized that claims for violation of CDAFA (Cal.

22  Pen. Code § 502(c)) are not subject to preemption under CUTSA because such claims are statutory

23  and therefore excluded from preemption under Cal. Civil Code § 3426.7, which expressly provides

24  that CUTSA does not supersede "any statute relating to misappropriation of a trade secret, or any

25  statute otherwise regulating trade secrets," "other civil remedies that are not based upon

26  misappropriation of a trade secret" nor "criminal remedies, whether or not based upon

27

28  [4] Despite the near complete legal and factual overlap between Philips' CFAA and CDAFA claims, Defendants do not argue that the CFAA claim is preempted by CUTSA.

No.: 2:21-cv-00876                                     -14-

misappropriation of a traded secret."  In *Regents of the University of California v. Aisen*, 2016 WL 4097072, *8 (S.D. Cal. April 18, 2016), the court rejected the argument that a Section 502(c) claim can be preempted by CUTSA, noting "it is illogical to think that the California legislature enacted a computer crime provision and deliberately included a civil remedy that would in turn be preempted by other legislation authorizing civil protection for trade secrets."  *See also JEB Group, Inc. v. San Jose III*, 2020 WL 2790012, *4 (C.D. Cal. March 31, 2020) (holding "because [plaintiff's] CCCDAFA claim is based upon a statutory violation, not common law, it is not preempted"); *Heieck v. Federal Signal Corp.*, 2019 WL 6873869, *4 (C.D. Cal Nov. 4, 2019) (holding that a CDAFA claim is not a common law claim and is instead a criminal, statutory claim that is expressly outside the bounds of CUTSA preemption); *Synopsys, Inc. v. Ubiquiti Networks, Inc.* 313 F. Supp. 3d 1056, 2074 (N.D. Cal. 2018) (holding that CUTSA preemption does not extend to statutory claims such as Section 502(c)).

Even courts that have applied preemption to CDAFA claims have done so only where the CDAFA claim is based on the same conduct as the trade secret claim.  For example, in *Henry Schein, Inc. v. Cook*, No. 16-cv-03166- JST, 2017 WL 783617 *5 (N.D. Cal., March 1, 2017), cited by Defendants, the court found that the plaintiff "cannot plausibly allege the second 'use' element of section 502(c)(2) without relying on facts from its CUTSA claim."  The same is true for the other cases cited by Defendants—each required the *use* of the trade secret facts to establish the CDAFA violation.  *See Western Air Charter Inc. v. Schembari,* No. 17-00420-AB (KSx), 2017 WL 10638759 *6 (C.D. Cal., October 6, 2017); *M Seven System Limited v. Leap Wireless International, Inc.,* No. 12-CV- 1424 CAB (BLM), 2013 WL 12072526 *3 (S.D. Cal., June 26, 2013); *C&H Travel & Tours, Inc. v. Chow,* No. 2:18-CV-06690RGKMRW, 2018 WL 6427369 *2 (C.D. Cal., Sept. 26, 2018).  Here, however, Philips' CDAFA claim does not rely on Defendants taking or using any information (trade secret or otherwise).  Rather, it is expressly based on Defendants' improper access to Philips' systems.

Accordingly, as with the fraud claim, even if the Complaint were stripped of all allegations of misappropriation, it would ***still*** be wrongful for Defendants to access Philips' systems, and Defendants' motion to dismiss likewise should be denied as to Philips' CDAFA claim.

## CONCLUSION

For the reasons above, Philips requests that the Court deny Defendants' motion to dismiss.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DATED:  August 10, 2021

REED SMITH LLP


By: */s/ Christopher J. Pulido*
    James T. Hultquist (admitted *pro hac vice*)
    Jennifer Y. DePriest (admitted *pro hac vice*)
    Ismail C. Kuru (admitted *pro hac vice*)
    Christopher J. Pulido (SBN 313142)

    *Attorneys for Plaintiff*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware