UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIPS NORTH AMERICA LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ADVANCED IMAGING SERVICES, INC., d/b/a Advanced Imaging Parts; and WANG XIUYUAN a/k/a Sean Wang,<br><br>　　　　Defendants. | No.  2:21-cv-00876-JAM-AC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

　　　This case involves a dispute between a manufacturer of medical equipment, Philips North America LLC ("Philips" or "Plaintiff"), and a business which contracts with hospitals and clinics to repair and maintain that equipment, Advanced Imaging Services.  See Compl. ¶¶ 1-2, ECF No. 1.  After Philips updated its software to require login credentials to access certain items within the systems, Advanced Imaging Services acquired a fake login so that it could continue servicing the equipment.  Id. ¶¶ 34-41.  Philips then filed this action and requested preliminary injunctive relief.  Mot. for Prelim Inj ("Mot."), ECF No. 6.  Because Philips has failed to meet its burden of

1

demonstrating irreparable harm is likely, this motion for a preliminary injunction is denied.[1]

      I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Philips develops, manufacturers, and sells medical imaging systems. Compl. ¶ 19. To support and maintain those systems, Philips has developed proprietary information, documentation, and software for servicing, which it refers to as its Customer Service Intellectual Property ("CSIP"). Id. ¶ 20. Philips grants individuals varying levels of access to its CSIP depending on their position and contractual terms. Id. ¶ 23. CSIP Level 0 materials are available to anyone in the United States who requests access. Id. Level 1 materials are available to Philips employees and customers with a valid contract and non-disclosure agreement. Id. Philips reserves CSIP Level 2 access for authorized Philips employees and specific trade partners under contract, and Level 3 access for only a subset of service specialists within Philips. Id.

Philips has developed and implemented measures to protect the confidentiality of its CSIP. Id. ¶¶ 24-26. For example, Philips' Integrated Security Tool ("IST"), a digital rights management solution, prevents unauthorized access to Philips' CSIP. Id. ¶ 27. Philips generates a user-specific IST certificate that controls the documents and service tools the user is entitled to access. Id. Each IST certificate is valid for 30 days and must be renewed, otherwise the IST certificate

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for September 28, 2021.

2

expires.  Id. ¶ 29.  Thus, a customer who enters into a service contract with nondisclosure terms may access certain service tools not available to a customer who has not.  Id. ¶ 30.

Founded in 2013, Advanced Imaging Services is in the business of servicing and maintaining CT and MRI equipment owned by hospitals and medical clinics, including Philips equipment. Sean Wang Decl. ("Wang Decl.") ¶ 5, ECF No. 30-4.  Most manufacturers of medical equipment have a one-year warranty for parts and service of their equipment.  Id. ¶ 11.  After the warranty expires however, some hospitals and medical clinics hire third-party companies, like Advanced Imaging Services, to maintain and repair their equipment.  Id.; see also Decl. of Zachery White ("White Decl.") ¶ 7, ECF No. 30-5.  Advanced Imaging Services contracts directly with hospitals and medical clinics, including St. John's Healthcare Center and SimonMed Beverly Hills, to repair and service the equipment owned by these facilities.  See Wang Decl. ¶ 12, Exs. 1-5; White Decl. ¶ 8; Decl. of Adam Setzler ("Setzler Decl.") ¶ 17, ECF No. 30-3. Advance Imaging Service contends that a few years after it entered into service contracts with St. Johns and SimonMed, Philips conducted a firmware update on its systems, requiring an IST certificate in order to prevent third-party companies like Advanced Imaging Service from conducting service or repairs on its machines.  Wang Decl. ¶ 23.

Advanced Imaging Services has never been issued an IST certificate beyond CSIP Level 0.  Compl. ¶ 36.  However, a Philips employee observed Sean Wang, the Chief Operating Officer of Advanced Imaging Services, using false login credentials to

access the Philips systems.  Id. ¶¶ 34-36; Wang Decl. ¶ 3. Philips' subsequent investigation revealed that Advanced Imaging Services has used false IST accounts to gain unauthorized access to Philips' proprietary CSIP a few times in order to continue servicing the equipment.  Id. ¶ 35.

In response, Philips filed this action against Advanced Imaging Services and Sean Wang ("Defendants") alleging: (1) violation of the Computer Fraud and Abuse Act; (2) violation of California's Comprehensive Computer Data Access and Fraud Act; (3) violation of the Digital Millennium Copyright Act; (4) violation of the Defend Trade Secrets Act; (5) violation of California's Uniform Trade Secrets Act; (6) violation of the California Unfair Trade Practices Act; and (7) fraud.  See generally Compl.  Defendants moved to dismiss Plaintiff's first, second, fourth, fifth, and seventh causes of action, which the Court granted in part and denied in part.  See Order Granting in Part and Den. in Part Mot. to Dismiss, ECF No. 86.  Specifically, the Court granted Defendants' motion to dismiss the seventh cause of action for fraud with prejudice.  Id. at 10.  The Court declined to dismiss the remaining claims.  Id.

Presently before the Court is Plaintiff's motion for a preliminary injunction to (1) prohibit Defendants from accessing or circumventing Philips' CSIP and other proprietary computer systems and information; (2) require Defendants identify all individuals they disclosed such information to, all the times they used the CSIP to service the systems, and all individuals who provided them information to access the systems; and (3) require Defendants return any Philips' CSIP or other

4

information within their control.[2] Notice of Mot. for Prelim. Inj. at 1, ECF No. 5. In seeking this injunction Plaintiff relied only on its Computer Fraud and Abuse Act; California's Comprehensive Computer Data Access and Fraud Act; and Digital Millennium Copyright Act claims. See generally Mot. Defendants opposed this motion. Opp'n, ECF No. 30. Plaintiff replied. Reply, ECF No. 84. The parties also submitted supplemental briefing. Pl.'s Suppl. Br. in Supp. of Mot., ECF No. 72; Defs.' Suppl. Br. in Opp'n, ECF No. 75; Defs.' Suppl. Br. on Recommendation and Final Rule, ECF No. 89; Pl.'s Suppl. Br. on Recommendation and Final Rule, ECF No. 90. For the reasons set forth below the Court denies Plaintiff's motion.

## II. OPINION

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). An injunction may be granted only where the movant shows that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. Id. at 20. "A preliminary injunction may also be appropriate if a movant raises serious questions going to the merits and the balance of hardships tips sharply towards it, as

---

[2] Defendants point out that because Plaintiff's requested injunction is, in part, mandatory, Plaintiff's burden is higher. See Opp'n at 12 (citing Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015)). Plaintiff failed to address this. However, as discussed below, this is immaterial, as Plaintiff has failed to meet even the more lenient standard.

5

1  long as the second and third <u>Winter</u> factors are satisfied."
2  <u>Disney Entera., Inc. v. VidAngel, Inc.</u>, 869 F.3d 848, 856 (9th
3  Cir. 2017).  The moving party bears the burden of meeting all
4  factors of the <u>Winter</u> test.  <u>See</u> <u>All. for the Wild Rockies v.</u>
5  <u>Cottrell</u>, 632 F.3d 1127, 1135 (9th Cir. 2011).
6      "[P]laintiffs must establish that irreparable harm is
7  <u>likely</u>, not just possible, in order to obtain a preliminary
8  injunction."  <u>Id.</u> at 1131.  "An injunction will not issue if the
9  person or entity seeking injunctive relief shows a mere
10 possibility of some remote future injury, or a conjectural or
11 hypothetical injury."  <u>Park Vill. Apartment Tenants Ass'n v.</u>
12 <u>Mortimer Howard Trust</u>, 636 F.3d 1150, 1160 (9th Cir. 2011)
13 (internal quotation marks and citations omitted).  Moreover,
14 "[s]peculative injury does not constitute irreparable injury
15 sufficient to warrant granting a preliminary injunction."
16 <u>Caribbean Marine Servs. Co., Inc. v. Baldrige</u>, 844 F.2d 668, 674
17 (9th Cir. 1988).
18     Here, Plaintiff has failed to meet its burden of showing
19 irreparable harm is likely.  Philips alleges Defendants'
20 continued violations will cause harm to their reputation, loss
21 of costumers, loss of goodwill, and dilution of the value of its
22 rights and confidential information.  <u>See</u> Mot. at 14.  To
23 support these contentions, Plaintiff relies on an affidavit of
24 Jacqueline Dickson, the program manager for customer service
25 intellectual property governance of Philips.  Dickson's First
26 Aff. ¶ 1, ECF No. 5-2.[3]  She states that "[i]f Defendants

---

[3] Defendants filed evidentiary objections to Dickson's affidavit. <u>See</u> Def.'s Ev. Obj., ECF 30-1.  These objections are preserved

continue with their unauthorized access and use of Philips' proprietary CSIP to service the Philips systems, there is an immediate risk of further dilution of the value of Philips' proprietary CSIP, lost business because of the damage to Philips' brand, and indeed, the potential for real harm to patients and medical providers who rely on Philips systems." Id. ¶ 29.  But such conclusory statements, without any concrete factual support, fail to demonstrate that harm is likely as opposed to merely possible.  See Am. Passage Media Corp v. Cass Commc'ns, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985) (finding an insufficient showing of irreparable harm in part because the submitted affidavits from plaintiff's own executives were conclusory and without sufficient factual support); see also Goldie's Bookstore, Inc. v. Superior Court of State of Cal., 739 F.2d 466, 472 (9th Cir. 1984) (noting loss of goodwill and customers could not support a finding of irreparable injury when based on speculation).

    The cases relied on by Plaintiff are inapposite.  Indeed, many relied on an outdated standard requiring merely a showing of possible harm.  See Mot. at 14 (citing Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (evaluating whether plaintiff made its required showing of a possibility of irreparable harm); Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 840-41 (9th Cir.

---

for the record but overruled for purposes of the Court's consideration of the motion for preliminary injunction.  Because the procedures for a preliminary injunction are less formal, a court may rely on evidence that would otherwise be inadmissible under the Federal Rules of Evidence, including hearsay.  Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009).

1  2001) (same)).  Even still the plaintiffs' harms were more
2  plausible than here.  For example, in Stuhlbarg, a trademark
3  dispute led to the movant's products being detained by U.S.
4  Customs.  240 F.3d at 835.  Thus, it was not just possible that
5  the movant would suffer irreparable harm but certain, as Customs
6  would continue to detain their products absent an injunction.
7  See id. at 840-41.  It was also clear how that would result in
8  loss of customers and goodwill, as the company would be unable
9  to fulfill its orders.  See id.  Contrastingly here, while
10 Plaintiff has presented evidence that Defendants accessed their
11 CSIP to service certain equipment, it failed to offer anything
12 other than speculation as to how this will affect Plaintiff or
13 its customers.
14      Further, Defendants' evidence of the contractual agreements
15 it must abide by undermine Plaintiff's harm arguments.  For
16 example, Plaintiff argues Defendants' unauthorized access may
17 cause harm because it will allow them access to confidential
18 patient data and other private information.  See Mot. at 15.
19 But the fact Defendants have confidentiality agreements with the
20 hospitals and clinics which require them to treat patient
21 information as confidential and comply with applicable privacy
22 laws, belies this concern.  See Wang Decl. ¶ 15, Exs. 1-5.
23 Additionally, Plaintiff contends Defendants may cause harm by
24 modifying the systems.  Mot. at 15.  But Defendants, whose own
25 business and reputation depends on properly servicing and
26 maintaining the equipment, and is also contractually obligated
27 to, seem to have little incentive to do so.  Moreover, even if
28 Plaintiff's fears were realized, it seems more plausible that

8

the hospitals would blame Defendants, who they have hired to service and maintain the machines, than the manufacturer should something go awry.  See Setzler Decl. ¶ 7; White Decl. ¶ 8.

Because Plaintiff has failed to meet its burden of demonstrating that irreparable injury is likely in the absence of an injunction, the Court need not address the remaining Winter factors.  See Ctr. for Food Safety v. Vilsack, 636 F.3d 1166, 1174 (9th Cir. 2011).

## III.  ORDER

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Preliminary Injunction.

IT IS SO ORDERED.

Dated: December 20, 2021

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE