UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIPS NORTH AMERICA LLC,<br><br>              Plaintiff,<br><br>     v.<br><br>ADVANCED IMAGING SERVICES,<br>INC., d/b/a ADVANCED IMAGING<br>PARTS; and WANG XIUYUAN, a/k/a<br>SEAN WANG,<br><br>              Defendants. | No.  2:21-cv-00876-JAM-AC<br><br><br>**ORDER DENYING PLAINTIFF'S<br>MOTION TO DISMISS DEFENDANTS'<br>COUNTERCLAIMS** |
| ADVANCED IMAGING SERVICES,<br>INC., d/b/a ADVANCED IMAGING<br>PARTS,<br><br>              Counter-Claimant,<br><br>     v.<br><br>PHILIPS NORTH AMERICA LLC,<br><br>              Counter-Defendant. | |

This case involves a dispute between a manufacturer of
medical equipment, Philips North America LLC ("Philips" or
"Plaintiff"), and a business that contracts with hospitals and
clinics to repair and maintain that equipment, Advanced Imaging
Services ("Advanced").  See Compl. ¶¶ 1-2, ECF No. 1.  After

1

Philips updated its software to require login credentials to access the equipment's systems, Advanced allegedly acquired a false or unauthorized login to continue servicing this equipment. Id. ¶¶ 34-41.  Philips then brought this action against Advanced and Sean Wang, Advanced's employee that allegedly used the false login credentials (collectively "Defendants").  Advanced and Wang subsequently filed counterclaims against Philips for violation of the Sherman Antitrust Act, copyright misuse, and violation of California's Unfair Competition Law.  Defs.' Countercls., ECF No. 91.  Philips now moves to dismiss those counterclaims.  Pl.'s Mot. to Dismiss Countercls. ("Mot."), ECF No. 96.[1]

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The parties are intimately familiar with the material facts and allegations of this case. The Court does not repeat them here.

Philips's Complaint against Advanced and Sean Wang, contained seven claims: (1) violation of the Computer Fraud and Abuse Act; (2) violation of California's Comprehensive Data Access and Fraud Act; (3) violation of the Digital Millennium Copyright Act; (4) violation of the Defend Trade Secrets Act; (5) violation of California's Uniform Trade Secrets Act; (6) violation of California's Unfair Trade Practices Act; and (7) Fraud.  Compl. Advanced and Wang moved to dismiss the first, second, fourth, fifth, and seventh causes of action.  Defs.' Mot. to Dismiss, ECF

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for February 15, 2022.

2

No. 37.  The Court granted this request as to the seventh claim
for fraud but declined to dismiss the other claims.  Order
Granting in Part and Denying in Part Defs.' Mot. to Dismiss, ECF
No. 86.  Thereafter, Advanced and Wang answered and asserted
counterclaims against Philips for (1) monopolization in violation
of Section 2 of the Sherman Antitrust Act; (2) attempted
monopolization in violation of Section 2 of the Sherman Antitrust
Act; (3) a claim for declaratory relief of copyright misuse; and
(4) violation of California's Unfair Competition Law.
Countercls.  Philips now moves to dismiss these counterclaims.
Mot.  Advanced and Wang opposed this motion.  Defs.' Opp'n to
Mot. to Dismiss Countercls. ("Opp'n"), ECF No. 100.  Philips
replied.  Philips' Reply, ECF No. 101.  For the reasons set forth
below, this motion is denied.


                        II.   OPINION

    A.   Legal Standard

    Dismissal is appropriate under Rule 12(b)(6) of the Federal
Rules of Civil Procedure when a plaintiff's allegations fail "to
state a claim upon which relief can be granted."  Fed. R. Civ.
P. 12(b)(6).  "To survive a motion to dismiss a complaint must
contain sufficient factual matter, accepted as true, to state a
claim for relief that is plausible on its face."  Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and
citation omitted).  While "detailed factual allegations" are
unnecessary, the complaint must allege more than "[t]hreadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements."  Id.  "In sum, for a complaint to

1   survive a motion to dismiss, the non-conclusory 'factual

2   content,' and reasonable inferences from that content, must be

3   plausibly suggestive of a claim entitling the plaintiff to

4   relief." <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 969 (9th Cir.

5   2009).

6   ///

7       B.   <u>Analysis</u>

8           1.   <u>Section 2 of the Sherman Act</u>

9       "Section 2 of the Sherman Act prohibits monopolies,

10   attempts to form monopolies, as well as combinations and

11   conspiracies to do so." <u>Image Tech. Servs., Inc. v. Eastman</u>

12   <u>Kodak Co.</u>, 125 F.3d 1195, 1202 (9th Cir. 1997) (citing 15 U.S.C.

13   § 2). "Simply possessing monopoly power and charging monopoly

14   prices does not violate § 2; rather, the statute targets the

15   willful acquisition or maintenance of that power as

16   distinguished from growth or development as a consequence of a

17   superior product, business acumen, or historic accident." <u>Pac.</u>

18   <u>Bell Tel. Co. v. linkLine Commc'n., Inc.</u>, 555 U.S. 438, 447-48

19   (2009) (internal quotation marks and citation omitted).

20   "Whereas § 1 of the Sherman Act targets <u>concerted</u>

21   anticompetitive conduct, § 2 targets <u>independent</u> anticompetitive

22   conduct." <u>FTC v. Qualcomm Inc.</u>, 969 F.3d 974, 989-90 (9th Cir.

23   2020).

24       "There are three essential elements to a successful claim

25   of Section 2 monopolization: (a) the possession of monopoly

26   power in the relevant market; (b) the willful acquisition or

27   maintenance of that power; and (c) causal 'antitrust' injury."

28   <u>Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP</u>,

4

1   592 F.3d 991, 998 (9th Cir. 2010) (internal quotation marks and

2   citation omitted).  To state a claim for attempted

3   monopolization, the plaintiff must allege "(1) that the

4   defendant engaged in predatory or anticompetitive conduct with

5   (2) a specific intent to monopolize and (3) a dangerous

6   probability of achieving monopoly power."  <u>Kaiser Found. Health

7   Plan, Inc. v. Abbott Labs., Inc.</u>, 552 F.3d 1033, 1044 (9th Cir.

8   2009) (internal quotation marks and citation omitted).

9              a.   <u>Monopoly Power in the Relevant Market</u>

10      "Plaintiff must plead a relevant market to state an

11  antitrust claim under the Sherman Act[.]"  <u>Hicks v. PGA Tour,

12  Inc.</u>, 897 F.3d 1109, 1120 (9th Cir. 2018).  "The relevant market

13  is the field in which meaningful competition is said to exist"

14  which is generally defined in terms of product and geography.

15  <u>Kodak</u>, 125 F.3d at 1202.  The "outer boundaries" of such a

16  market are determined by "the reasonable interchangeability of

17  use or the cross-elasticity of demand between the product itself

18  and substitutes for it."  <u>Brown Shoe Co. v. United States</u>, 370

19  U.S. 294, 325 (1962).  "As such, the relevant market must

20  include the group or groups of sellers or producers who have

21  actual or potential ability to deprive each other of significant

22  levels of business."  <u>Newcal Indus., Inc. v. Ikon Office Sol.</u>,

23  513 F.3d 1038, 1045 (9th Cir. 2008) (internal quotation marks

24  and citation omitted).

25      What constitutes the "relevant market" is typically a

26  factual rather than legal inquiry.  <u>Id.</u>  However, "there are

27  some legal principles that govern the definition of an antitrust

28  relevant market, and a complaint may be dismissed under Rule

1  12(b)(6) if the complaint's relevant market definition is
2  facially unsustainable." <u>Hicks</u>, 897 F.3d at 1120 (internal
3  quotation marks and citation omitted).

4      Advanced defines the relevant market as "the market for the
5  provision of maintenance, service, and repair on Philips' CT and
6  MRI machines in the United States." Countercls. ¶ 31. Philips
7  contends that this market is facially unsustainable warranting
8  dismissal. Mot. at 8.

9      First, Philips argues that "[Advanced] fails to plead
10 sufficient facts that would divorce the Philips-only service
11 aftermarket from the actual, real-world competition that occurs
12 between the various manufacturers of CT and MRI systems." <u>Id.</u>
13 Because there are three other major manufacturers of CT and MRI
14 equipment – Toshiba, GE, and Siemens – Philips contends the
15 relevant market should include servicing of these brands as
16 well. <u>Id.</u> at 8-10.

17     The Supreme Court's decision in <u>Kodak</u> is instructive here.
18 In that case independent service organizations that serviced
19 Kodak copying and micrographic equipment brought suit against
20 Kodak under the Sherman Act after Kodak implemented policies
21 that made it more difficult for ISOs to acquire Kodak parts.
22 <u>Eastman Kodak Co. v. Image Tech. Servs.</u>, 504 U.S. 451, 455-58
23 (1992). Kodak argued that a single brand of product or service
24 can never constitute the relevant market under the Sherman Act.
25 <u>Id.</u> at 481. The Supreme Court disagreed finding that a single-
26 brand aftermarket for parts and service of Kodak equipment could
27 arise once customers had purchased and were "locked in" to Kodak
28 equipment. <u>Id.</u> at 477-482. The Court reasoned that "[b]ecause

6

1  service and parts for Kodak equipment are not interchangeable

2  with other manufacturers' service and parts, the relevant market

3  from the Kodak equipment owner's perspective is composed of only

4  those companies that service Kodak machines." Id. at 482.

5      This is exactly what Advanced alleges here — a derivative

6  aftermarket in servicing Philips equipment.  As in Kodak,

7  Philips made this change after the sale of the primary good,

8  when purchasers were "locked in".  See id. at 476-77.  Thus,

9  these purchasers could not have had information about the

10  restricted aftermarket at the time of purchase.  See Oracle Am.,

11  Inc. v. Terix Comput. Co., Inc., No. 5:13-cv-03385-PSG, 2014 WL

12  5847532, at *6 (N.D. Cal. Nov. 7, 2014) ("Certainly these

13  customers who had purchased Solaris products before the merger

14  could not have consented to the alleged restrictive aftermarket

15  because at the time it did not exist.").  Because service for

16  Philips's equipment is not interchangeable with other

17  manufactures' service, the relevant market from the Philips

18  equipment owner's perspective is composed of only those

19  companies that service Philips machines.  See Kodak, 504 U.S. at

20  482.

21      Nor is the Court persuaded by Philips' argument that the

22  market is facially unsustainable since it contains two types of

23  machines.  Mot. at 11.  Market realities may warrant a single

24  market for both.  See Kamakahi v. Am. Soc. for Reprod. Med., No.

25  C 11-01781 SBA, 2013 WL 1768706, at *10 (N.D. Cal. Mar. 29,

26  2013) ("Because market definition is a deeply fact-intensive

27  inquiry, courts hesitate to grant motions to dismiss for failure

28  to plead relevant product market.").  If not, Advanced may

7

1  proceed on a theory that Philips holds monopolies over two

2  relevant service markets, as the ISOs did in <u>Kodak</u>.  <u>See</u> <u>Kodak</u>,

3  125 F.3d at 1203 ("the ISOs proceeded on the theory that Kodak

4  held monopolies over two relevant parts markets: the Kodak

5  photocopier parts market and the Kodak micrographic parts

6  market.").  Accordingly, Philips has failed to show the relevant

7  market alleged by Advanced is facially unsustainable.

8       Advanced has also sufficiently alleged Philips has monopoly

9  power in this market.  The existence of monopoly power

10  "ordinarily is inferred from the seller's possession of a

11  predominant share of the market."  <u>Kodak</u>, 504 U.S. at 464.

12  "Where such an inference is not implausible on its face, an

13  allegation of specific market share is sufficient, as a matter

14  of pleading, to withstand a motion for dismissal."  <u>Hunt-Wesson</u>

15  <u>Foods, Inc. v. Ragu Foods, Inc.</u>, 627 F.2d 919, 925 (9th Cir.

16  1980).  Advanced alleges that Philips has a 90 percent market

17  share.  Countercls. ¶ 35.  This is sufficient to overcome a

18  motion to dismiss.  <u>See</u> <u>Actividentity Corp. v. Intercede Grp.</u>

19  <u>PLC</u>, No. C 08-4577 VRW, 2009 WL 8674284, *4 (N.D. Cal. Sept. 11,

20  2009) (finding allegations that the party had approximately 90%

21  of the market were sufficient to allege monopoly power).

22                    b.  <u>Anticompetitive Conduct</u>

23       "To safeguard the incentive to innovate, the possession of

24  monopoly power will not be found unlawful unless it is

25  accompanied by an element of anticompetitive <u>conduct</u>."  <u>Verizon</u>

26  <u>Commc'ns. Inc v. Law Offices of Curtis V. Trinko, LLP</u>, 540 U.S.

27  398, 407 (2004).  The conduct element requires "the use of

28  monopoly power to foreclose competition, to gain a competitive

advantage, or to destroy a competitor." <u>Kodak</u>, 125 F.3d at 1208
(internal quotation marks omitted).  "Anticompetitive conduct is
that which is without a legitimate business purpose that makes
sense only because it eliminates competition." <u>Sambreel
Holdings LLC v. Facebook, Inc.</u>, 906 F.Supp.2d 1070, 1081 (S.D.
Cal. 2012).

Advanced alleges that Philips engaged in anticompetitive
conduct by limiting access to the machine's operating menu,
operating systems, and diagnostic software, which effectively
blocked all ISOs, including Advanced, from competing with
Philips in the service market for these machines.  Countercls.
¶¶ 15-18.  "Specifically, Philips unrolled a series of firmware
updates to its imaging equipment that, for the first time,
imposed a new log-in screen that blocks anyone without Philips
access credentials from accessing any part of the equipment's
operating menu, operating systems, or diagnostic software." <u>Id.</u>
¶ 17.  This prevented Advanced, and other ISOs, from servicing
the equipment.  <u>Id.</u> ¶ 18.

Philips contends that these allegations are insufficient to
demonstrate anticompetitive conduct.  Mot. at 12-14.  Philips
argues that it has no duty to aid Advanced, its competitor, by
licensing their software.  Mot. at 12-14.  This, however,
misconstrues Advanced's claim.  Advanced's theory of
anticompetitive conduct is not that Philips refused to deal with
Advanced and grant it a license.  Opp'n at 12.  Rather, the
anticompetitive conduct alleged is the implementation of this
new technological barrier for the sole purpose of preventing
ISOs access.  <u>Id.</u>  Philips responds that it has a "right to

develop the security features of its intellectual property via firmware updates." Mot. at 14.  At this stage though, the Court must accept as true Advanced's factual allegations and view them in the light most favorable to Advanced.  See Mansarket v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).  Advanced has alleged that Philips had no legitimate business reason for this update and did so only to limit competition in the service market.  Countercls. ¶ 30.  This is sufficient to allege anticompetitive conduct.  See Epicor Software Corp. v. Alt. Tech. Sols., Inc., No. SACV 13-00448-CJC (RNBx), 2013 WL 3930545, at *3 (C.D. Cal. June 21, 2013) (finding allegations that Epicor coerced customers into using only Epicor authorized partners to provide service for the ERP Platform without any valid business reason sufficient to plead anticompetitive conduct).

Accordingly, the Court denies Philips' motion to dismiss Advanced's monopolization and attempted monopolization claims.

### 2.   Copyright Misuse

"Copyright misuse is a judicially crafted affirmative defense to copyright infringement [. . .]" Apple Inc. v. Psystar Corp., 658 F.3d 1150, 1157 (9th Cir. 2011).  Courts have also allowed it to be asserted as an affirmative claim for declaratory relief.  See Apple Inc. v. Psystar Corp., No. C 08-03251 WHA, 2009 U.S. Dist. LEXIS 14370, at *8 (N.D. Cal. Feb 6, 2009).  The "purpose of the defense" is to "prevent[] holders of copyrights from leveraging their limited monopoly to allow them control of areas outside the monopoly." Apple, 658 F.3d at 1157 (internal quotation marks and citation omitted).  The doctrine

10

1  "does not prohibit using conditions to control use of

2  copyrighted material, but it does prevent copyright holders from

3  using the conditions to stifle competition." Id. at 1159.  The

4  Ninth Circuit has "applied the doctrine sparingly."  Id. at

5  1157.

6      Philips, relying on Triad Systems Corporation v.

7  Southeastern Express Company, 64 F.3d 1330 (9th Cir. 1995),

8  argues Advanced has failed to state a claim for copyright

9  misuse.  Mot. at 4.  In Triad, the plaintiff designed computers

10 for use in the automotive industry and licensed unique

11 diagnostic software to service those computers.  Id. at 1333.

12 The defendant was an independent service organization that

13 serviced Triad computers.  Id.  Triad sued the defendant for

14 copyright infringement based on its unauthorized use of their

15 diagnostic software.  Id.  The Ninth Circuit rejected

16 defendant's copyright misuse claim because "Triad did not

17 attempt to prohibit [the defendant] or any other [independent

18 service organization] from developing its own service software

19 to compete with Triad." Id. at 1337.  Philips argues that

20 Advanced fails to state a claim for misuse as it does not allege

21 "Philips conditions licensure of its copyrights on terms that

22 prevent [Advanced] or anyone else from developing, offering, or

23 using software (i.e. diagnostic software) that competes with

24 Philips'." Mot. at 5.

25     Philips again misconstrues Advanced's claim.  Advanced's

26 misuse claim is not premised on Philips' failure to issue it a

27 license to its software or placing conditions on its licenses.

28 Opp'n at 14.  Rather, Advanced alleges that Philips has

"leveraged the limited monopoly granted by its copyrights on
certain aspects of its software in order to restrict access to
all systems in its CT and MRI machines – whether legitimately
protected or not."  Opp'n at 13.  In other words, Advanced
alleges that Philips locked Advanced and other ISOs out of its
systems in order to prevent competition in the servicing market
under the guise of protecting their copyrighted material.  Thus,
Advanced claims Philips leveraged its limited monopoly on its
diagnostic software to control an area outside this monopoly —
the ability to service Philips machines.  Unlike in Triad, this
would prevent the ISOs from developing their own servicing
software to compete with Philips, as such software would be
useless without access to the systems to use it.  This is
sufficient to state a claim of copyright misuse.  See Omega S.A.
v. Costco Wholesale Corp., 776 F.3d 692, 705 (9th Cir. 2015)
(Wardlaw, J., concurring) (noting that if Apple placed a few
lines of programming code from its copyrighted software onto a
piece of computer hardware that was not entitled to intellectual
property protection, with the express purpose of using its
copyright to restrict competing retailers from selling that
hardware at discounted prices, that would constitute copyright
misuse); see also Philips N. Am., LLC v. Summit Imaging Inc.,
No. C19-1745-JLR, 2020 WL 6741966, at * 8 (W.D. Wash. Nov. 16,
2020) (finding ISO had stated a copyright misuse claim by
alleging Philips enforced its copyrights with the intent to
exclude competition in the market for service and repairs).  As
such, the Court declines to dismiss Advanced's copyright misuse
counterclaim.

3.   Noerr-Pennington Doctrine

The Noerr-Pennington doctrine derives from the First Amendment's guarantee of "the right of the people [. . .] to petition the Government for a redress of grievances." U.S. Const. amend. I.  "Under the Noerr-Pennington doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006).  "However, where a party engages in 'sham' petitioning, Noerr-Pennington immunity does not apply." Meridian Project Sys., Inc. v. Hardin Const. Co., LLC, 404 F.Supp.2d 1214, 1220 (E.D. Cal. 2005).  "The 'sham' litigation exception exempts from Noerr-Pennington immunity activity 'ostensibly directed toward influencing governmental action' that 'is a mere sham to cover [. . .] an attempt to interfere directly with the business relationships of a competitor.'" Id. (quoting E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961)).

Philips reliance on the Noerr-Pennington doctrine does not alter the Court's analysis.  Philips has "not done it justice by making what is effectively a passing reference to it in their briefs, and the Court declines to take it up in that underdeveloped form." Shen v. Albany Unified Sch. Dist., 3:17-cv-02478-JD, 2018 WL 4053482, at *4 (N.D. Cal. Aug. 24, 2018). Philips bears the burden on its motion to dismiss, and it has failed to carry it here.  Estate of Osuna v. Cty. of Stanislaus, 392 F.Supp.3d 1162, 1179 (E.D. Cal. 2019) (finding defendant's insufficient briefing on an issue did not support dismissal).

1                    4.   California Unfair Competition Law

2          The parties agree Advanced's California Unfair Competition

3   Law ("UCL") counterclaim is dependent on, and correlates, with

4   the federal claims.  See Mot. at 15; Opp'n at 15.  Because

5   Advanced's federal counterclaims survive, so too does the UCL

6   counterclaim.  See Sidibe v. Sutter Health, No. 12-cv-04854,

7   2021 WL 879875, at *10 (N.D. Cal. Mar. 9, 2021) ("The UCL claim

8   survives to the extent that the underlying claims survive.").

9

10                          III.   ORDER

11         For the reasons set forth above, the Court DENIES Philips'

12  Motion to Dismiss Defendants' counterclaims.

13         IT IS SO ORDERED.

14  Dated: April 15, 2022

15                                        _____

16                                        JOHN A. MENDEZ,
                                          UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

                                   14