UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIPS NORTH AMERICA LLC, | No. 2:21-cv-00876 DAD AC |
| Plaintiff, | |
| v. | ORDER and |
| ADVANCED IMAGING SERVICES, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

    This action was filed on May 13, 2021. ECF No. 1. Presently before the court is plaintiff's motion for spoliation sanctions. ECF No. 178. Defendants filed an opposition, ECF No. 180, and plaintiff replied, ECF No. 186. The matter was heard before the court on July 19, 2023. ECF No. 193. Plaintiff's explanatory slides were filed under seal by leave of court. ECF No. 195. Defendants emailed a letter brief in response, to which plaintiff emailed a reply. The court directed that each document be docketed under seal. ECF No. 196. This case has been before the court for discovery related matters multiple times; all parties involved are familiar with the case history, and the legal standards that apply to discovery are familiar and need not be repeated here. See Rule 26(b)(1), Fed. R. Civ. P. Following a complete review of the records, the undersigned GRANTS the motion for monetary spoliation sanctions and RECOMMENDS the issuance of mandatory adverse jury instructions as an additional sanction.

**I.      Relevant Procedural Background**

This action was filed on May 13, 2021. ECF No. 1. Early in the case, plaintiff moved for a preliminary injunction and expedited limited discovery. ECF Nos. 5, 7. On June 24, 2021, the undersigned granted the motion for expedited limited discovery, which included in relevant part a Request for Production seeking "A native copy of every IST Certificate" acquired by the defendants. ECF No. 31 at 4. On July 30, 2021, plaintiff moved to compel responses to its requests for production. ECF No. 51. On August 6, 2021, the court granted the motion. ECF No. 57.

At issue in the August 2021 motion was RFP No. 3, to which defendants had represented they would produce for inspection "dongles" containing IST certificates. A "dongle" is a piece of computer hardware that can be plugged into a device; physically, it looks like a piece of plastic with a port on the end. ECF No. 54 at 4. According to plaintiff, the dongles at issue are smart card readers that include a Philips' customer smart card, and each smart card includes a Philips IST Certificate with attendant entitlements. Id. The parties scheduled an inspection of the dongles, which remained in the possession of defendants and/or defense counsel. See Affidavit of Ismail Cem Kuru "Kuru Aff.," ¶ 22.3. However, after the inspection was scheduled, defense counsel raised an objection and stated it would only allow a visual inspection of the dongles, and not testing or imaging. Id. at ¶ 22.4. Plaintiff, arguing that a visual inspection of the plastic dongle was useless, moved to compel an inspection of the contents of the dongle.

The court granted the motion to compel, finding that "it is not credible that defendants believed a visual inspection of the dongles was ever contemplated by plaintiff or, indeed, would be responsive to RFP No. 3. An IS[T] certificate contained in a dongle is quite obviously part of the contents of the dongle, not an externally visible characteristic of the device. This is not a case in which the physical condition of the dongle is at issue, like a products liability case in which dongles were alleged to have been manufactured with unreasonably sharp plastic edges or collapsed external ports. Accordingly, 'inspection' here could not be reasonably construed to mean a purely visual inspection of the physical devices." ECF No. 57 at 10. Following this order, plaintiff's retained examiners were allowed to search the dongle, leading to the series of

events described below and giving rise to plaintiff's claim that the evidence on the dongle at issue was spoliated by defendants.

## II.     Analysis

"There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'" Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006). Philips asserts that it has evidence to demonstrate that defendants intentionally deleted the only fake IST Certificate they have admitted using, overwriting it with a new fake IST Certificate, thereby spoliating important evidence. ECF No. 178. Philips argues that, considering this evidence and defendants' pattern of discovery misconduct, it is entitled both monetary and adverse inference sanctions. ECF No. 178 at 18-22.

### A.  Finding that Spoliation Occurred

The threshold question is whether spoliation occurred, a question which the parties hotly dispute. Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 649 (9th Cir. 2009) (internal quotations/citations omitted). Federal Rule of Civil Procedure 37(e) provides the elements for spoliation of electronically stored information ("ESI"). Under Rule 37(e), spoliation occurs if: (1) the relevant ESI "should have been preserved" for the litigation; (2) it "is lost because a party failed to take reasonable steps to preserve it"; and (3) it "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). "The moving party bears the burden of establishing that spoliation occurred by demonstrating that the non-moving party destroyed the documents and had some notice of the document's relevance to the litigation before they were destroyed." Deerpoint Grp., Inc. v. Agrigenix, LLC, No. 1:18-cv-00536-AWI-BAM, 2022 WL 16551632, at *11 (E.D. Cal. Oct. 31, 2022). The applicable standard of proof is a preponderance of the evidence. Id.

#### 1.  The Relevant ESI Should have Been Preserved

Here, first element of spoliation is clearly met. The court specifically ordered production

3

and inspection of the ESI at issue (the dongle containing an IST certificate, device ID 2590563). ECF No. 57. The parties do not and cannot dispute that the evidence at issue was required to be preserved, and that defendants were fully aware of the need for preservation.

2. Defendants Failed to Preserve the ESI

The second element of spoliation is also met. Philips submitted an affidavit from Jonathan Karchmer, Manager of Forensics at iDiscovery Solutions ("iDS"), dated September 7, 2021. ECF No. 178-6. In this affidavit Mr. Karchmer stated that he attempted to inspect a dongle provided by defendants, for which the IST Client software registered a device associated to a user named "Sean Wang" and indicated it was device ID 2580563. Id. at 5. He was unable to access the content of the dongle because the passwords provided by defendant ("swang123" or "wang123") were incorrect. Id. Mr. Karchmer provided a second affidavit dated April 25, 2023. ECF No. 178-7. In relevant part, he stated as that he was sent the same dongle for re-inspection on May 25, 2022. Id. at 4. At this inspection, the password "wang123" was accepted but the certificate was expired, and Karchmer could not view any entitlement information (a list of levels of access for each type of documents or applications that the IST Certificate was authorized to unlock) on the SIM card as a result. Id. at 5. He also noted that the Certificate's expiration date was different from than the expiration date he had observed at the first inspection. At the first inspection, the expiration date read "Jun 11, 2021[,]" and at the second inspection it read "Jun 12, 2021 00:59:59[.]" Id.

Based on his two inspections, Karchmer opined as follows: "In view of the certificate on the SIM card that I inspected in May 2022 having a different expiration date than the certificate on the same SIM card that I inspected in August 2021, as well as the 'swang123' password being accepted for the certificate on the SIM card that I inspected in May 2022, but not for the certificate on the same SIM card that I inspected in August 2021, I conclude that the certificate on the SIM card was modified at some point between my August 2021 inspection and May 2022 inspection. In addition, because I used write blocking protection during both inspections, and because Windows does not directly interpret or address SIM media for writing, these modifications to the certificate on the SIM card could not have been caused by my inspections."

Id. Considering the alleged modification, the IST certificate observed in May 2022 and after is referred to below as the "New Wang Certificate" for clarity. ECF No. 178 at 9.

On June 22, 2022, a second forensic consultant retained by Philips, Dr. Alessandro Orso, a Professor in the School of Computer Science and an Associate Dean in the College of Computing at the Georgia Institute of Technology, inspected the dongle and confirmed what iDS had viewed in its second inspection: upon inserting the dongle into the laptop, Dr. Orso, like iDS, was prompted by the IST Client software to enter a password. Dr. Orso used the password "swang123", which the IST Client software accepted, but the software again reported the New Wang Certificate's status as "Expired" on "Jun 12, 2021, 00:59:59." ECF No. 178 at 9; ECF No. 178-13 (filed under seal, Affidavit of Alessandro Orso in Support of Plaintiff's Motion for Sanctions (Exhibit L). Dr. Orso reported that he was able to access and view additional data including entitlements, and he found that the New Wang Certificate entitlement included only a list of the categories; the data as to the corresponding authorized level of access was missing. Orso Aff. at ¶ 27.

Philips asserts that "[a]n IST Certificate without Entitlement Data is akin to a generic metal key that has yet to be shaped for a specific lock—it has the potential to unlock locks, but it will not do so until it is shaped for the lock that it will open. The New Wang Certificate is a generic metal key, not yet shaped to unlock any CSIP Level 1 or above material." ECF No. 178 at 10. Based on the forensic evidence, Philips contends the that "the New Wang Certificate on the dongle was made using a fake IST Certificate generator, likely created by Alexander Kalish, who admitted in another lawsuit to writing software that allowed creation of fake IST Certificates."[1] Id. Following his examination of the IST certificate, Dr. Orso concluded that "the

---

[1] Defendants admit to purchasing the dongle at issue here (a USB smart card reader containing a fake IST Certificate) from an individual named Alexander Kalish in April 2018. (See Dkt. 75-2 (Wang Decl.) at ¶ 5). In addition to the dongle, Kalish provided a second USB smart card reader that was empty—i.e., it did not contain a smart card. Kalish was a defendant in the now-resolved case Philips N. Am. LLC et al v. 626 Holdings, LLC et al, No. 9:19-cv-81263 (S.D. Fl. Sept. 12, 2019). In the 626 Holdings lawsuit, Alexander Kalish, admitted to writing software that allowed creation of fake IST Certificates (the "Kalish Generator") and to providing an IST certificate to Sean Wang in a zipped folder. ECF No. 70-17, at ¶¶ 8, 10b, 12, 13b.

Wang IST Certificate that was present [during his] June 2022 inspection necessarily replaced to August 2021 IST Certificate." Orso Reply Aff. ¶ 14 (Reply Exhibit C). Dr. Orso's affidavit also states that the changes in the certificate could not have occurred by reasons other than tampering, such as by the expiration of the certificate or by the consultant examination process. Dr. Orso states, "my testing confirmed that both (1) entitlements are not removed from a dongle when it expires, and (2) the procedure I used during my 2022 inspection to set the system clock in the past and access[] the expired certificate would not have altered or removed any entitlement on the Wang IST Certificate if it had been present." Id. at ¶ 16.

Defendants "adamantly deny modifying, replacing, changing, or manipulating the IST Certificate on the dongle they purchased." ECF No. 181 at 5. They assert that Philips' consultants used untested methods and that "[w]hat really happened here is that the smart card expired, much like how a credit card expires, and as a result Philips' IST Client software was unable to read the entitlements." Id. at 6. However, defendants do not explain how such expiration could have caused the identified changes. Dr. Orso specifically declared that expiration would not cause the identified changes, and defendants have offered only rhetoric to the contrary. They have presented no expert to identify flaws in the methods used by Philips consultants, nor any technical basis to question their conclusions.

While defendants assert that Philips "lacks any substantiated evidence beyond inferences and unsupported theories and fails to prove that the two minor changes in Defendants' IST Certificate – the expiration date changing by one hour and the original password going from non-working to working – evidence that Defendants actually replaced the original expired IST Certificate with another (still expired) IST certificate that lacked the 'empty' Entitlement Data," they put forth no alternative innocuous explanation for the "minor" changes. Id. Any changes to electronically stored information contained on a dongle, absent any explanation as to how the changes could have passively occurred through automated systems, indicate that affirmative action was taken to make the changes.

During the hearing on this motion, the court asked defendants directly whether they had any competing expert or consultant opinion, or alternative theory of what could have caused the

changes in the IST certificate. Defendants were not prepared to offer an alternative theory at the hearing, and counsel for defendants indicated both that they did not believe an expert or external review was needed and that they could not reasonably obtain an expert. The reply letter submitted in opposition to plaintiffs' demonstrative slides does not offer any competing or alternative theory whatsoever for the changes on the IST certificate. ECF No. 196. Defendants have relied exclusively on the vehemence of their denials of wrongdoing. Counsel's degree of righteous indignation, however, is not evidence.

In the absence of any plausible alternative explanation for the changes, and in the face of declarations from two highly qualified consultants stating that changes occurred to the IST certificate—evidence that was entirely within defendants' possession and control during the relevant period—which could not have occurred without human tampering, the court concludes that defendants spoliated the evidence in question. The evidence demonstrates that the IST certificate, which is indisputably central to this case, was deliberately altered while in the exclusive custody of defendants. The undersigned therefore concludes that defendants "engaged deliberately in deceptive practices that undermine the integrity of the judicial proceedings." Leon, 464 F.3d at 958. By tampering with the ESI, defendants inherently "failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e).

### 3. The ESI Cannot be Restored or Replaced

Per the affidavit of Jacqueline Dickson, a Program Manager for plaintiff, when "a new fake IST Certificate is generated and place on the same dongle, [there is] no way to view any of the data about the prior fake IST Certificate." ECF No. 178-2 at 3. No argument for potential recovery of the original IST Certificate has been put forth. The court finds this element has been met.

Considering the analysis above, in light of all arguments and papers set forth, the undersigned makes the following express finding of fact: defendants spoliated the IST certificate contained on dongle at issue, Device ID 2580563.

B. Sanctions

Federal Rule of Civil Procedure 37(b) permits sanctions for a party's spoliating conduct

where it amounts to a failure to comply with a court's prior discovery order. See Fed. R. Civ. P. 37(b)(2); Weride Corp. v. Kun Huang, No. 5:18-cv-07233-EJD, 2020 U.S. Dist. LEXIS 72738, at *30-31 (N.D. Cal. Apr. 16, 2020). Specifically, Rule 37(b)(2)(A) provides that court may enter sanctions "[i]f a party … fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)." Courts may also impose sanctions for spoliation pursuant to their inherent authority. Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006). Here, plaintiffs seek sanctions in the form of (1) reasonable fees and costs incurred in conducting the forensic inspections and preparing this motion; (2) issuance of mandatory adverse inference instructions; and (3) an order prohibiting the defendants from relying on the absence of Entitlement Data on the New Wang Certificate or from referencing it in support of defendants' defenses. ECF No. 178 at 22.[2]

   1. Evidentiary Sanctions

When a court makes a finding of spoliation, Fed. R. Civ. P. 37 provides for two routes for sanctions: in general, the court may order "measures no greater than necessary to cure the prejudice," however, if the court finds that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation" the court may (A) presume the lost information was unfavorable to the spoliating party, (B) issue adverse jury instructions, or (C) dismiss the action or enter default judgment. "In the Ninth Circuit, a party may be entitled to an adverse inference instruction based on spoliation even in the absence of a finding of bad faith . . . [t]he Court need only find that [spoliating party] acted with "conscious disregard" of its obligations." Apple Inc. v. Samsung Elecs. Co., 888 F. Supp. 2d 976, 998 (N.D. Cal. 2012). A district court "has the broad discretionary power to permit a fact-finder to draw an adverse

---

[2] While plaintiff indicates its belief that terminating sanctions (presumably striking counterclaims) are warranted, it does not extensively brief its entitlement to such extreme sanctions. ECF No. 178 at 19. Instead, plaintiff focuses its argument on curative jury instructions. Id. at 20. This is appropriate, because before moving to terminating sanctions the court is required to consider several factors, including the "the availability of less drastic sanctions." Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006). Plaintiff's briefing indicates that it believes the less drastic sanction of adverse jury instructions is adequate here, and the court agrees. Thus, the court declines to consider terminating sanctions at this juncture.

inference" from the spoliation of evidence against the spoliating party. Earp v. Davis, 881 F.3d 1135, 1143 (9th Cir. 2018) (citing Glover, 6 F.3d at 1329). "To determine whether an adverse inference spoliation instruction is warranted, the majority of courts use a three-part test consisting of the following elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Scalia v. County of Kern, No. 1:17-cv-01097-AWI-CDB, 2023 WL 2333542, at *3 (E.D. Cal. Mar. 2, 2023) (collecting cases).

Here, based on the analysis above, the undersigned concludes that defendant acted with a culpable state of mind and conscious disregard for the preservation of evidence that it knew to be relevant, and in fact material, to the litigation. Plaintiff has demonstrated that the IST certificate was irrevocably destroyed and replaced while in the defendants' possession, and defendants have offered no plausible innocent explanation for the changes attested to by two separate consultants. Accordingly, the court recommends[3] that the District Judge issue the following mandatory jury instructions:

1. Defendants bought and possessed a fake IST Certificate with at least CSIP Level 1 access to which they were not authorized by Philips.
2. Defendants possess or have access to a fake IST certificate generator.
3. Defendants used or instructed others to use a certificate generator to create a new fake IST Certificate and attempted to hide their misconduct by endeavoring to have the new fake IST Certificate match the data on the original IST Certificate that Philips observed during the first inspection of the Dongle.

---

[3] Federal courts in this Circuit have determined that Magistrate Judges have authority to issue adverse jury instructions as sanctions for spoliation so long as the jury instructions are not dispositive of issues in the case. Apple Inc. v. Samsung Elecs. Co., 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012). Here, the undersigned believes that the recommended jury instructions are necessary to cure the prejudice of spoliation, but also recognizes that the instructions may have dispositive effect. Thus, rather than ordering the sanctions, the undersigned recommends their adoption to the District Judge for a final determination.

4. Defendants placed that new fake IST Certificate on the same smart card, thereby deleting all data on the original IST Certificate that Defendants used to access Philips' Systems, including entitlement information that was favorable to Philips and showed that Defendants had the means to access and use Philips' proprietary CSIP on Philips Systems, including trade secret information.

5. Defendants intended to access Philips Systems without authorization and/or in excess of their level of access authorized by Philips; and

6. Defendants used the now-destroyed fake IST Certificate to acquire and/or use Philips proprietary CSIP on Philips Systems, including trade secret information.

The undersigned further recommends that defendants be prohibited from relying on the absence of Entitlement Data on the New Wang Certificate or from referencing it in support of defendants' defenses. The undersigned finds that these jury instructions and limitations are necessary to cure the prejudice caused by plaintiff's inability to examine the Dongle and the IST certificate at issue in its original state due to defendants' spoliation.

2. Monetary Sanctions

Rule 37(b)(2)(C) provides that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." See Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). Monetary sanctions are also mandatory under Rule 37(e). Here, there is no justification for Defendants' spoliation of the Entitlement Data and their corresponding failure to comply with this Court's discovery order; nor is there any reason why a monetary sanction would be unjust.

The appropriate method for computing fees in this case is the lodestar approach, in which the court multiplies the number of hours reasonably expended on the motion by a reasonable hourly rate. Cunningham v. County of Los Angeles, 879 F.2d 481, 484 (9th Cir. 1988). "The measure to be used 'is not actual expenses and fees but those the court determines to be reasonable.'" Matter of Yagman, 796 F.2d 1165, 1184–85 (9th Cir. 1986). An award of attorney's fees must be reasonable and aligned with typical local rates within the Eastern District

of California.  Plaintiffs did not request a specific fee award or provide supporting documentation.  Thus, the request for monetary sanctions is GRANTED and plaintiff has 14 days from the date of this order to submit the necessary documentation.  Defendants will have 7 days following plaintiff's submission to object to the reasonableness of the request.  A separate order on the monetary sanction will follow.

### III.  Conclusion

In light of the foregoing, it is hereby ORDERED that plaintiff's motion for sanctions (ECF No. 178) is GRANTED with respect to monetary sanctions.  Plaintiff shall file, within 14 days from the date of this order, its specific fee and expense request along with all necessary documentation.  Defendants may file objections to plaintiff's request within 7 days following plaintiff's submission.  A separate order on the monetary sanction will follow.

The undersigned makes an express finding of spoliation.  It is therefore RECOMMENDED that the District Judge impose the following mandatory adverse jury instructions:

1. Defendants bought and possessed a fake IST Certificate with at least CSIP Level 1 access to which they were not authorized by Philips.
2. Defendants possess or have access to a fake IST certificate generator.
3. Defendants used or instructed others to use a certificate generator to create a new fake IST Certificate and attempted to hide their misconduct by endeavoring to have the new fake IST Certificate match the data on the original IST Certificate that Philips observed during the first inspection of the Dongle.
4. Defendants placed that new fake IST Certificate on the same smart card, thereby deleting all data on the original IST Certificate that Defendants used to access Philips' Systems, including entitlement information that was favorable to Philips and showed that Defendants had the means to access and use Philips' proprietary CSIP on Philips Systems, including trade secret information.
5. Defendants intended to access Philips Systems without authorization and/or in excess of their level of access authorized by Philips; and

    6. Defendants used the now-destroyed fake IST Certificate to acquire and/or use Philips proprietary CSIP on Philips Systems, including trade secret information.

The undersigned further RECOMMENDS that the District Judge issue an order prohibiting the defendants from relying on the absence of Entitlement Data on the New Wang Certificate or from referencing it in support of defendants' defenses in this case.

    These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, parties may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 7, 2023

_[signature]_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE